# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-4159

_____

| | | |
|---|---|---|
| Dwight W. Keefer, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Provident Life and Accident | * | |
| Insurance Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 14, 2000

Filed: December 21, 2000

_____

Before BOWMAN and BEAM, Circuit Judges, and BOGUE,[1] District Judge.

_____

BEAM, Circuit Judge.

Dwight Keefer appeals the district court's[2] dismissal of his action for damages as a sanction for discovery abuses. Keefer first filed this action for declaratory relief

_____

[1]The Honorable Andrew S. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable D. Brook Bartlett, now deceased, United States District Judge for the Western District of Missouri.

in Missouri state court seeking a declaration of the obligations of Provident Life and Accident Insurance Company under a policy of disability insurance. Provident removed the action to federal district court and filed a counterclaim seeking damages for overpayment of benefits. In its counterclaim, Provident contends that Keefer is not disabled.

## I.  BACKGROUND

Dwight Keefer alleges that he is disabled by reason of trauma-induced fibromyalgia, a seizure disorder, and mental illness. He contends his disability is the result of an automobile accident, thus entitling him to lifetime disability benefits from Provident. Provident first contended that Keefer's disability was due to an illness, not an accident, thus entitling Keefer to benefits only until he reaches age 65. Provident has since denied coverage for any disability after December 1998.

This action has a tortured discovery history. The principal bone of contention has been the production of certain appointment books, also known as "DayTimers," in which Keefer contemporaneously recorded his daily activities. Provident wanted these records of daily activities to impeach the testimony of numerous medical experts who had based their diagnoses on Keefer's own accounts of his daily activities.

Early in the litigation, Provident requested that Keefer identify relevant documents, data compilations, and tangible things. Keefer failed to divulge that he possessed either DayTimers or secretly-recorded audiotapes in response to the request. Later, in a deposition, Keefer testified that he had created daily "pain and seizure" calendars and had relied on his DayTimers to compile those records. He also testified

to the existence of tapes and transcripts of secretly-recorded telephone conversations.[3]

Keefer's deposition lasted several days in May 1998 and continued in August 1998. During the deposition, Provident produced a copy of the 1996 DayTimer that it had obtained from a friend of Keefer's estranged wife, Todd Morgan.[4] Keefer was questioned at length regarding the DayTimer and admitted crossing out certain entries, including golf tee times, in the DayTimer. He was later asked by letter to produce copies of any DayTimers from 1990 through 1998 that he had. He was again asked in a formal request for production in June 1998, to produce the DayTimers. Keefer responded that he was attempting to recover 1994 and 1996 DayTimers in his divorce proceeding, that he would produce the 1995 and 1997 DayTimers shortly, but was still using the 1998 DayTimer.[5] Provident then requested production of the 1998 DayTimer to date.

---

[3]A parallel dispute concerning Keefer's failure to produce tapes and transcripts of these secretly-recorded conversations, and his assertions of privileges with reference thereto, was the subject of other discovery interventions by the court. We need not set out the particulars of that dispute except to note that it provides further evidence of Keefer's obstructive tactics.

[4]Keefer moved for a protective order and for sanctions in connection with documents Todd Morgan gave Provident, contending that they had been obtained in violation of Rule 45(b) of the Federal Rules of Civil Procedure which requires prior notice to adverse parties of service of a subpoena duces tecum, and on various assertions of privilege. The district court found no violation by Provident and noted "if everything that is [Keefer's] definition of private is perceived by him to be protected from discovery, then we've got a problem, we've got a big problem."

[5]Keefer contended that, via motions for production in Arizona state court divorce proceedings, he attempted to obtain DayTimers that he asserted his estranged wife had stolen from him. However, he later successfully moved to seal records in the divorce action and to quash the deposition of his estranged wife on the ground of marital privilege.

In July 1998, the parties agreed to an extension for production of the documents until July 30, 1998. On July 31, 1998, Keefer produced copies of only the 1995 and 1997 DayTimers.

Keefer's deposition was continued in August 1998. At that time he testified that he had crossed out entries in the 1997 DayTimer. He testified that he had not produced the 1998 DayTimer timer because he was still using it. In October 1998, Provident served Interrogatories on Keefer, requesting that he state what had been written and later "crossed out, blacked out or otherwise rendered unreadable" in the DayTimers. Keefer responded that it would be too costly and burdensome for him to do so: he identified 468 deletions in the 1995 DayTimer, 454 in the 1997 DayTimer, and 670 in the 1998 DayTimer. He generally asserted attorney-client, work product, and marital privilege with respect to unspecified deletions.

In December 1998, Keefer was again requested to provide all DayTimers and to set forth any assertions of privilege with respect to the documents. An in-chambers conference was held on January 11, 1999, in connection with various discovery disputes. At the conference, Keefer's counsel stated that he would assess whether any redacted information in the 1998 DayTimer was privileged.

The district court held another hearing in connection with a different discovery dispute on March 30, 1999. Responding to concerns about the DayTimers, the court stated, "I want to see the entire unredacted DayTimers." At that point Provident and the court learned that the redactions had been made on the original 1998 DayTimer. The court noted, "that's an outrageous thing . . . just absolutely unbelievable . . . that is unacceptable behavior" and ordered Keefer to deliver the original DayTimer to the court and to reconstruct, as accurately as possible, all deleted entries. Keefer provided the DayTimer and his reconstruction to the court on April 23, 1999.

On May 21, 1999, the district court entered an order finding that Keefer had not made a good-faith effort to reconstruct the DayTimer and that the DayTimer did not appear to contain any privileged information. The court allowed Provident to inspect the original DayTimer and scheduled an evidentiary hearing to determine whether any further sanctions were appropriate. At the evidentiary hearing, Keefer testified that he redacted the DayTimer timer because he felt his privacy was being invaded. He testified generally that he could not remember when the redactions had been made but acknowledged that it was after his deposition and after he knew that Provident was interested in and wanted copies of his DayTimers. He also testified that he had destroyed the transcripts of some tape-recorded conversations.

After the evidentiary hearing, but before the court had entered its order imposing sanctions, Keefer telephoned the court to request that the 1998 DayTimer be returned to him for examination by an expert document reconstructionist. Provident strenuously objected to any such procedure.

On July 30, 1999, the district court held a telephone conference with the parties during which he announced his intention to dismiss Keefer's action as a sanction. The court found that Keefer's actions were willful and that Provident had been immeasurably harmed by the actions. He further found a "pattern of conduct" intended to impair or inhibit discovery. The district court denied Keefer's motion to alter or amend the judgment and Provident voluntarily dismissed its counterclaim.

Keefer appeals. He contends that the district court erred in dismissing the case because the evidence has not been destroyed and Provident has not shown it has been irreparably harmed by the obliteration of the DayTimer.

## II.    DISCUSSION

Federal Rule of Civil Procedure 37(b)(2)(C) authorizes the court to impose sanctions upon parties who fail to comply with discovery orders; however, dismissal may be considered as a sanction only if there is:  (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party.  Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000).  Although we review the district court's discovery decisions for an abuse of discretion, we more closely scrutinize dismissal imposed as a discovery sanction because "'the opportunity to be heard is a litigant's most precious right and should be sparingly denied.'"  Chrysler Corp. v. Carey, 186 F.3d 1016, 1020 (8th Cir. 1999) (quoting Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977)) .  We must determine whether the sanction imposed is just and specifically related to the claim at issue.  Baker v. General Motors Corp., 86 F.3d 811, 817 (8th Cir. 1996), rev'd on other grounds, 522 U.S. 222 (1998). Also, before imposing the sanction of dismissal, fairness requires a court to consider whether a lesser sanction is available or appropriate.  Id.  The district court is not, however, constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances. Chrysler Corp., 186 F.3d at 1022.  Also, when a litigant's conduct abuses the judicial process, the remedy of dismissal is within the inherent powers of the court.  Id.; see also Lindstedt v. City of Granby, No. 99-2624, 2000 WL 1689042 (8th Cir. Nov. 13, 2000) (per curiam).

We find the record in this case supports imposition of the harsh sanction of dismissal.  Keefer had been ordered first to produce the document and later to make a good-faith reconstruction of it.  The district court found Keefer's obliteration of entries in the DayTimer was willful, based on a credibility determination that we are reluctant to second guess.  Although the precise measure of harm to Provident may not be quantified, we have no difficulty finding prejudice.  Provident was denied the means to effectively counter medical evidence of disability, which was based on Keefer's subjective complaints to his treating physicians,  with compelling evidence of  Keefer's

daily activities, including golf and travel, that would undermine Keefer's credibility. Keefer himself admitted that he obliterated golf tee times. Keefer was offered an opportunity to make a good-faith effort to reconstruct the entries and he failed to do so.[6] In addition, the district court considered and rejected lesser sanctions.

The record in this case reveals the type of dilatory and contumacious conduct that merits the severe sanction of dismissal. Keefer persisted in failing to properly respond to discovery requests in the face of numerous warnings by the district court. We add that the DayTimer incident is but one of numerous examples of Keefer's obstructive discovery tactics.

## III. CONCLUSION

Accordingly, we find no abuse of discretion by the district court. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]Keefer's last-minute attempt to have expert reconstruction of the documents is simply "too little, too late." The time to have contacted a document reconstruction expert would have been at the time the district court ordered Keefer to reconstruct the obliterated entries. Adverse parties are not obligated to expend time and money pursuing legitimate motions for sanctions only to have courts allow last minute rescues. Courts cannot be willing participants in such improper uses of discovery mechanisms.