# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3051

_____

James Carmody, individually, and on behalf of a class of others similarly situated;
Marcus Davis, individually, and on behalf of a class of others similarly situated;
Robert Vivona, individually, and on behalf of a class of others similarly situated

*Plaintiffs - Appellants*

v.

Kansas City Board of Police Commissioners; Mark Daniel Heimer

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 13, 2013
Filed: April 23, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Sergeant James Carmody, Officer Marcus Davis, and Officer Robert Vivona (officers) appeal the district court's[1] orders (1) striking the officers' affidavits submitted in resisting summary judgment, and (2) granting summary judgment to the Kansas City Board of Police Commissioners (board) and Captain Mark Daniel Heimer (Heimer) (collectively, city) on the officers' Fair Labor Standards Act (FLSA), 29 U.S.C. § 203, et seq., claims against the city. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND
    A.    Facts
    The officers allege Heimer, as Captain of Tactical Response Team III (response team), instituted a policy of flextime beginning in January 2006 and ending in November 2009. Under this flextime policy, the officers allege they were given flextime or time off rather than receiving overtime compensation at time-and-a-half. The FLSA requires overtime be paid at time-and-a-half for any hours worked over forty in a week. See 29 U.S.C. §§ 207, 215. Neither the officers nor the city tracked the accrued flextime, which time the officers allege they would lose if they did not use the hours within a short period.

    The Kansas City Police Department's (department) Internal Affairs Department (IA) investigated the flextime practices and found the officers worked unpaid overtime hours, though the IA investigation could not determine if the officers were later given flextime for the unpaid overtime. After confirming the flextime practice, the IA investigation cross-referenced department documents to determine if the officers worked hours that went unrecorded and unpaid. These department

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

documents included activity sheets, after action reports, and payroll diary information. The IA investigation showed 373.6 hours of unpaid overtime based on activity sheets and another 107.4 hours unpaid overtime based on other documents. On March 8, 2010, the IA issued a memorandum summarizing this investigation and reporting that the investigators could not determine whether the identified hours were given as unrecorded flextime in lieu of paid overtime because the officers could not "identify specific occurrences when flextime was mandated." The Administration Bureau, led at the time of the IA investigation by Deputy Chief Cheryl Rose, used the hours reported by the IA and the individual officers' rate of pay to calculate the amount of money the department owed to the officers. Because the department maintained a "daily overtime policy" that entitled officers who worked beyond their daily shift to time-and-a-half pay, regardless of whether they were entitled to overtime pay under the FLSA's weekly formula, the IA report of "unpaid overtime" did not establish that the department had failed to pay any officer at the overtime rate required by the FLSA for hours worked in excess of forty per week.

## B. Procedural History

On February 10, 2011, the officers sued the city under the FLSA, claiming unpaid overtime compensation.[2] On June 14, 2011, the officers informally requested department documents, including after action reports. On December 27, 2011, the officers' interrogatory responses confirmed the flextime practice and described occurrences when flextime was used, but did not suggest the number of uncompensated hours or the amount of money owed. These discovery responses stated that the officers would need access to department documents, such as daily activity sheets and other records, in order to formulate more accurate responses.

---

[2]The three named officers initially brought suit under FLSA § 215 on behalf of the other response team officers. At first, the district court conditionally certified this suit as a collective action, but later denied class certification on March 30, 2012. That denial is not at issue in this appeal.

The city indicated the majority of the requested department documents, including activity sheets, after action reports, and other documents, were produced by January 17, 2012, with all but 165 documents delivered by January 27, 2012. The officers contend they did not receive the last of over 13,000 department documents until February 16, 2012. The city deposed the officers between February 21 and March 2, 2012.

Discovery closed on March 2, 2012. On March 30, 2012, the city moved for summary judgment, proposing, among other challenges, the officers could not, as a matter of law, satisfy their evidentiary burden. On April 30, 2012, the officers attempted to defeat summary judgment by attaching affidavits to their response. These affidavits contained precise estimations, week by week, of hours owed. The city moved to strike the affidavits. In companion orders, the district court struck the officers' affidavits and granted the city's motion for summary judgment, deciding the officers unjustifiably failed to comply with their discovery obligations and that, without the affidavits, the officers failed to satisfy their burden of production by showing "the amount and extent of their alleged overtime work."

The officers appeal the adverse grant of summary judgment and the exclusion of the affidavits.

## II. DISCUSSION
### A. Standard of Review

We review a discovery ruling, in this case striking the affidavits, for abuse of discretion. See Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004). We review a grant of summary judgment de novo, considering all evidence in the light most favorable to, and making all reasonable inferences for, the nonmoving party. See id.; Jenkins v. S. Farm Bureau Cas., 307 F.3d 741, 743 (8th Cir. 2002). We will affirm summary judgment if "there is no genuine dispute as to any material fact" and the city "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A complete failure

to prove an essential element of the officers' case "renders all other facts immaterial." See Settle v. Ross, 992 F.2d 162, 163 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### B.    Striking of Affidavits

The officers contend the district court abused its discretion when it struck the affidavits.  We disagree.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires parties to make initial disclosures, including a computation of damages, which under Rule 26(e)(1)(A) must be supplemented when new information comes to light.  The district court has discretion under Rule 37(c)(1) to apply sanctions against a party who has failed to satisfy initial or supplemental disclosure requirements; for example, excluding the evidence or testimony entirely.  That "discretion to fashion a remedy or sanction" is "wide," but "narrows as the severity of the sanction or remedy . . . increases." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008).

The district court struck the affidavits because it found the officers "unjustifiably failed to comply" with Rule 26(e)(1)(A).  In striking the affidavits, the district court applied a balancing test we previously found helpful to evaluate the admissibility of evidence a party did not properly disclose.  See Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994) (using the balancing test for admissibility of testimony from witnesses not listed before trial). Under this balancing test, the district court evaluated the importance of the evidence to the officers, the justifications for the officers' failure to comply, the prejudice to the city if the evidence were allowed to be used, and whether a continuance would effectively cure the prejudice.  See id.  The district court considered these affidavits important evidence supporting the officers' prima facie case, although the affidavits provided little explanation for the number of hours the officers claimed.  As justification for the delay, the officers argued (1) the "relaxed" evidentiary standard

from <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), discussed below, diminished their evidence production obligation; (2) the substantial volume of department documents produced late in discovery mitigated their fault; and (3) the city should have called this issue into question earlier in discovery. The district court weighed these arguments and concluded this factor "heavily" favored the city because the officers never moved for additional time to review these department documents and the burden of production was on the officers, not the city.

The district court considered the timing of this evidence extremely prejudicial to the city, because the city's entire litigation posture might have been different if these numbers had been offered earlier. The district court believed admitting these affidavits would also prolong the litigation and probably require reopening discovery and deposing every officer a second time. The district court concluded a continuance would not alleviate this prejudice to the city because prolonging the litigation would cause unnecessary burdens and expenses to the parties and tax judicial resources.

The district court went one step further by recognizing that striking the affidavits would be tantamount to dismissal. Citing <u>Keefer v. Provident Life and Accident Insurance Company</u>, 238 F.3d 937 (8th Cir. 2000), the district court considered lesser sanctions. <u>Keefer</u> dealt with Rule 37 sanctions for discovery violations and outlined guidelines to evaluate whether the severe sanction of dismissal was justified. <u>Id.</u> at 940-41 (explaining the "district court is not . . . constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances"). Applying <u>Keefer</u>, the district court determined "lesser sanctions would not adequately penalize the plaintiffs," or deter future litigants from refusing to comply with discovery requests. <u>See</u> <u>id.</u> Given this additional consideration of lesser sanctions by the district court, we find no abuse of discretion in striking the affidavits. <u>See</u> <u>id.</u>; <u>Citizens Bank of Batesville, Ark.</u>, 16 F.3d at 966.

**B.   Summary Judgment**

The officers contend they produced sufficient evidence to allow a jury to find the amount of damages by just and reasonable inference, even without the affidavits. See Anderson, 328 U.S. at 686-88.  Under de novo review, we disagree.

Because the city failed to keep accurate time records, the district court applied the "relaxed" evidentiary standard outlined in Anderson.  See id.  When an employer maintains accurate time records, as required under the FLSA, employees can satisfy their evidentiary burden by securing those accurate time records.  See id. at 687. When an employer fails to maintain accurate time records, Anderson relieves the employee of proving the precise extent of uncompensated work and creates a relaxed evidentiary standard.  See id.  Under this relaxed evidentiary standard, once the employee has shown work performed for which the employee was not compensated, and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference.  Id. at 687-88.  Anderson only applies where the existence of damages is certain.  See id. at 688.  Anderson allows uncertainty only for the amount of damages.  See id.

The officers contend a jury should decide whether their evidence supports a just and reasonable inference of uncompensated time.  Yet the officers failed to adduce sufficient record evidence to show they suffered actual damages, as is required by Anderson.  See id.  To meet their initial burden, the officers must show they carried flex hours forward into a new work week, or went entirely unpaid for those hours.  See id.; Dole v. Tony & Susan Alamo Found., 915 F.2d 349, 351 (8th Cir. 1990) (requiring the plaintiff to produce evidence of uncompensated labor before shifting the burden).   The officers contend the (1) IA investigation report, (2) deposition of Deputy Chief Rose, and (3) officers' interrogatory answers and deposition testimony are all evidence of an FLSA violation.  To the contrary, the

officers have not produced evidence indicating any hours worked over forty hours per week were carried forward into a new work week or were never paid.

The IA investigation confirmed the flextime practice and cross-referenced department documents, including activity sheets, payroll diary information, and after action reports, to determine the officers worked hours of unpaid overtime. The IA investigation, however, is insufficient evidence of actual damages, because the investigation could not determine whether the officers used flextime or time off for the hours where overtime appeared unpaid. The officers were unable "to identify specific occurrences when flextime was mandated," and the report states the officers might have used flextime, or time off, to account for the hours.

Deputy Chief Rose's testimony is also not evidence of an FLSA violation because it is based on the IA investigation. Deputy Chief Rose explained that the department owed money to the officers and that "it would be wrong to deny wrongdoing." The Administration Bureau's role was to use the overtime hours identified in the IA investigation and determine reimbursement amounts based on specific pay rates for each officer from 2006 through 2009. The deposition provides no information regarding which, if any, of the hours identified in the IA investigation violated the FLSA.

The officers' interrogatory responses were similarly vague: the responses confirmed the flextime practice generally and described flextime occurrences, but without specific dates worked, specific hours worked, or money owed. In order to formulate more accurate responses, the officers requested access to department documents, including daily activity sheets, after action reports, and other documents. Similarly, the officers' deposition testimony described the flextime practice, but did not provide any evidence of actual damages because the testimony contained no reference to overtime hours that violated the FLSA. In fact, ten of the officers repeated their interrogatory requests to view department documents, even though the

officers possessed these documents at that time. The officers fail to identify any record evidence showing actual damages from unpaid work in excess of forty hours per week, in violation of the FLSA.

The city's failure to provide accurate time records reduces the officers' burden, but does not eliminate it. Even though <u>Anderson</u> relaxes the burden of proof, the officers must still prove the existence of damages. <u>See</u> <u>Anderson</u>, 328 U.S. at 688. Viewed in the light most favorable to the officers, the officers have failed to provide any evidence of actual damages. Without record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the officers' unsupported estimations of the unpaid hours due are not enough.

## III.   CONCLUSION
We affirm.

_____