BENTON, Circuit Judge.
Peg Bouaphakeo and other named plaintiffs are employees of Tyson Foods, Inc. They represent a class of employees at Tyson’s meat-processing facility in Storm Lake, Iowa. They sued Tyson for not paying wages due under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., and the Iowa Wage Payment Collection Law (IWPCL), Iowa Code 91A.1 et seq. A jury returned a verdict for the class. Tyson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.
I.
The employees are current and former “gang-time” employees at Tyson’s facility. The background is similar to that in Lopez v. Tyson Foods, Inc., 690 F.3d 869, 873-75 (8th Cir.2012) (adapted to the facts of this case):
To calculate the employees’ compensable working time, Tyson measures “gang time” — when the employees are at their working stations and the production line is moving. The employees claim Tyson failed to provide FLSA overtime compensation for donning (putting on) personal protective equipment (PPE) and clothing before production and again after lunch, and for doffing (taking off) PPE and clothing before lunch and again after production. The PPE and clothing worn by individual employees vary depending on their role in the process. Tyson classifies items of PPE and clothing as either “unique” or “non-unique” to the meat-processing industry. ... The employees also seek compensation for transporting the items from lockers to the production floor.
In addition to “gang time,” Tyson adds “K-code” time to each employee’s paycheck. Before 2007, Tyson paid four minutes of K-code time per day to each [employee in a department where knives were used] in order to compensate for the donning and doffing of unique items. From [February] 2007 to [June] 2010, Tyson added [several minutes] per day for pre-and post-shift walking time required of the employee.... Tyson does not record the actual time that employees perform any of these tasks.
The FLSA prohibits the employment of any person “for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.” 29 U.S.C. § 207(a)(1); *795 IBP, Inc. v. Alvarez, 546 U.S. 21, 25 [126 S.Ct. 514, 168 L.Ed.2d 288] (2005). An employee who sues for unpaid overtime “has the burden of proving that he performed work for which he was not properly compensated.” Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 [66 S.Ct. 1187, 90 L.Ed. 1515] (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub.L. No. 80-49, 61 Stat. 84; Fast v. Applebee’s Int’l, Inc., 638 F.3d 872, 881 (8th Cir.2011). “Neither ‘work’ nor ‘workweek’ is defined in the statute.” Alvarez, 546 U.S. at 25 [126 S.Ct. 514]. At one time, the Supreme Court defined work as “physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.” Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 [64 S.Ct. 698, 88 L.Ed. 949] (1944), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub.L. No. 80-49, 61 Stat. 84. The Court then “clarified that ‘exertion’ was not in fact necessary for an activity to constitute Vork’ under the FLSA.” Alvarez, 546 U.S. at 25 [126 S.Ct. 514], citing Armour & Co. v. Wantock, 323 U.S. 126, 133 [65 S.Ct. 165, 89 L.Ed. 118] (1944).
Whether an employee’s activity is “work” does not end the compensability analysis. In the Portal-to-Portal Act, Congress excluded some activities that might otherwise constitute work from the FLSA. The Act excepts two categories:
(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.
29 U.S.C. § 254(a); Alvarez, 546 U.S. at 26-28, 126 S.Ct. 514. “[Activities performed either before or after the regular work shift, on or off the production line, are compensable ... if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by [29 U.S.C. § 254(a)(1) ].” Steiner v. Mitchell, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (emphasis added). And, “any activity that is ‘integral and indispensable’ to a ‘principal activity’ is itself a ‘principal activity’ under [29 U.S.C. § 254(a) ].” Alvarez, 546 U.S. at 37, 126 S.Ct. 514.
The Department of Labor has a “continuous workday rule,” generally defining an employee’s “workday” as “the period between the commencement and completion on the same workday of an employee’s principal activity or activities.” 29 C.F.R. § 790.6(b); Alvarez, 546 U.S. at 29, 37 [126 S.Ct. 514] (describing and applying the continuous workday rule). During the continuous workday, the compensability of all activities that otherwise satisfy the requirements of the FLSA is not affected by the Portal-to-Portal Act’s exceptions. In Alvarez, the Supreme Court held that “during a continuous workday, any walking time that occurs after the beginning of the employee’s first principal activity and before the end of the employee’s last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a *796 result is covered by the FLSA.” Alvarez, 546 U.S. at 37 [126 S.Ct. 514],
The employees sued in 2007, claiming that Tyson’s K-code time was insufficient to cover compensable pre- and post-production line activities, violating the FLSA and IWPCL. The district court[1] certified the FLSA claim as a collective action and the IWPCL claim as a Rule 23 class action.[2] During a nine-day trial, plaintiffs proved liability and damages by using individual timesheets, along with average donning, doffing, and walking times calculated from 744 employee observations. The jury returned a verdict for the class of $2,892,378.70. With liquidated damages, the final judgment totaled $5,785,757.40.
II.
Tyson argues that the district court erred in certifying the FLSA collective action — under 29 U.S.C. § 216(b)— and the IWPCL class — under Rule 23.[3] Class certification is reviewed for abuse of discretion. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir.2010) (reviewing class certification under Rule 23 for abuse of discretion); Hipp v. Liberty Nat’l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir.2001) (“The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court”). A district court may certify a class under Rule 23(b) if “questions of law or fact common to class members predominate over any questions affecting only individual members,” and “a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Fed.R.Civ.P. 23(b). The FLSA allows named plaintiffs to sue “for and in behalf of ... themselves and other employees similarly situated.” 29 U.S.C. § 216(b). Plaintiffs may be similarly situated when “they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.” O’Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir.2009). A court may consider “(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.” Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir.2001).[4]
*797 According to Tyson, factual differences between plaintiffs — differences in PPE and clothing between positions, the individual routines of employees, and variation in duties and management among departments — make class certification improper. These differences, Tyson says, do not allow the class action to “generate common answers apt to drive the resolution of the litigation.” Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 874 (2011). See Luiken v. Domino’s Pizza, LLC, 705 F.3d 370, 374-76 (8th Cir.2013) (applying Dukes and reversing certification when the interaction between individual customers and employees meant liability was “dominated by individual issues”); Bennett v. Nucor Corp., 656 F.3d 802, 815 (8th Cir.2011) (denying certification when there were “stark inter-departmental variations in job titles, functions performed, and equipment used”). Unlike Dukes, Tyson had a specific company policy — the payment of K-code time for donning, doffing, and walking— that applied to all class members. Unlike Dukes, class members worked at the same plant and used similar equipment. The time study showed that donning and doffing all equipment, plus walking, took an average of 18 minutes in the fabrication department and 21 minutes in the kill department. True, applying Tyson’s K-code policy and expert testimony to “generate ... answers” for individual overtime claims did require inference, but this inference is allowable under Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (allowing liability based on “just and reasonable inference” when complete records do not exist). While individual plaintiffs varied in their donning and doffing routines, their complaint is not “dominated by individual issues” such that “the varied circumstances ... prevent ‘one stroke’ determination.” Luiken, 705 F.3d at 374, 376, quoting Dukes, 131 S.Ct. at 2551. The district court did not abuse its discretion in certifying the class.
Tyson also contends that the class should be decertified because evidence at trial showed that some class members did not work overtime and would receive no FLSA damages even if Tyson under-compensated their donning, doffing, and walking. See In re Zum Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 616 (8th Cir.2011) (“A district court may not certify a class ... ‘if it contains members who lack standing.’ ”), quoting Avritt, 615 F.3d at 1034; Blades v. Monsanto Co., 400 F.3d 562, 571 (8th Cir.2005) (when “not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy ... damages to all class members must be shown to justify the class action”). Cf. Espenscheid v. DirectSat USA LLC, 705 F.3d 770, 774 (7th Cir.2013) (finding certification improper when piece-rate system varied pay from worker-to-worker, use of an average conferred a “windfall” on some class members, and employees had incentive to under-report time). Tyson exaggerates the authority for its contention. See Comcast Corp. v. Behrend, — U.S. —, 133 S.Ct. 1426, 1433, 185 L.Ed.2d 515 (2013) (allowing variation in damages unless “individual damage calculations ... overwhelm questions common to the class”); Amgen Inc. v. Connecticut Ret. *798 Plans & Trust Funds, — U.S.—, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013) (“Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.”) (second emphasis added); DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir.1995) (“The fact that individuals ... will have ... claims of differing strengths does not impact on the commonality of the class as structured.”); Mejdrech v. Met-Coil Sys. Corp., 319 F.3d 910, 911 (7th Cir.2003) (“If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop.”).[5]
At any rate, at Tyson’s request, the jury was instructed, “Any employee who has already received full compensation for all activities you may find to be compensable is not entitled to recover any damages.” Tyson’s instruction directed the jury to treat plaintiffs with no damages as class members. It is “fundamental that where the defendant ... ‘invited error’ there can be no reversible error.” United States v. Beason, 220 F.3d 964, 968 (8th Cir.2000), quoting United States v. Steele, 610 F.2d 504, 505 (8th Cir.1979).
III.
Tyson believes that plaintiffs improperly relied on a formula to prove liability. In Dukes, the Supreme Court disapproved of “Trial by Formula.”
A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery — without further individualized proceedings.
Dukes, 131 S.Ct. at 2561. Here, plaintiffs do not prove liability only for a sample set of class members. They prove liability for the class as a whole, using employee time records to establish individual damages. Using statistics or samples in litigation is not necessarily trial by formula. See Comcast, 133 S.Ct. at 1434 (considering expert’s multiple-regression model); Perez v. Mountaire Farms, Inc., 650 F.3d 350, 372 (4th Cir.2011) (favoring “a calculation based on the summation of mean times” to represent “the amount of time that employees working at the plant actually spend donning and doffing”). Cf. Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309, 1325 n. 5, 182 L.Ed.2d 272 (2012) (relying on “a sample of federal habeas cases”).
Plaintiffs do rely on inference from average donning, doffing, and walking times, but they apply this analysis to each class member individually. Using this representative evidence is comparable to a jury applying testimony from named plaintiffs to find classwide liability. See Fed. *799 R.Civ.P. 23 (allowing representative parties when their claims “are typical of the claims or defenses of the class” and they “fairly and adequately protect the interests of the class”). For the donning, doffing, and walking in Mt. Clemens, testimony from eight employees established liability for 300 similarly situated workers. Mt. Clemens, 328 U.S. at 684, 66 S.Ct. 1187; Mt. Clemens Pottery Co. v. Anderson, 149 F.2d 461, 462 (6th Cir.1945) (discussing testimony). To prove damages, the Court remanded for “the determination of the amount of walking time involved and the amount of preliminary activities performed” based on “whatever reasonable inferences can be drawn from the employees’ evidence.” Mt. Clemens, 328 U.S. at 693-94, 66 S.Ct. 1187.
Tyson claims that plaintiffs presented insufficient evidence to prove damages classwide. See Murray v. Stuckey’s, Inc., 939 F.2d 614, 621 (8th Cir.1991) (“[PJlaintiffs’ evidence failed to show, for each individual plaintiff, ‘that he has in fact performed work for which he was improperly compensated.’ ”), quoting Mt. Clemens, 328 U.S. at 687, 66 S.Ct. 1187; Marshall v. Truman Arnold Distrib. Co., Inc., 640 F.2d 906, 911 (8th Cir.1981) (requiring further evidence from non-testifying employees before awarding damages when earnings projections were substantially rebutted by cross-examination). Cf. Dukes, 131 S.Ct. at 2560 (requiring “individualized determinations of each employee’s eligibility for backpay” as a procedural prerequisite for certification under Title VII). This court “will not reverse a jury verdict for insufficient evidence unless ‘after viewing the evidence in the light most favorable to the verdict, [it concludes] that no reasonable juror could have returned a verdict for the non-moving party.’ ” Denesha v. Farmers Ins. Exch., 161 F.3d 491, 497 (8th Cir.1998), quoting Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.1997) (en banc). See Sandifer v. United States Steel Corp., — U.S.—, 134 S.Ct. 870, 880, 187 L.Ed.2d 729 (2014) (agreeing “with the basic perception of the Courts of Appeals that it is most unlikely Congress meant [the FLSA] to convert federal judges into time-study professionals”). Tyson has no evidence of the specific time each class member spent donning, doffing, and walking. “[W]hen an employer has failed to keep proper records, courts should not hesitate to award damages based on the ‘just and reasonable inference’ from the evidence presented.” Reich v. Stewart, 121 F.3d 400, 406 (8th Cir.1997), quoting Martin v. Tony & Susan Alamo Found., 952 F.2d 1050, 1052 (8th Cir.1992) (allowing “pattern or practice” evidence when defendant provided “self-serving, unsubstantiated approximations” of employee hours), citing Mt. Clemens, 328 U.S. at 687-88, 66 S.Ct. 1187.
To prove damages, plaintiffs use individual timesheets, along with average times calculated from a sample of 744 observations of employee donning, doffing, and walking. Plaintiffs’ expert testified that the sample was large for this type of study, representative, and approximately random. He testified that the study used “accepted procedure in industrial engineering.” Tyson’s Director of Human Resources testified that K-code time did not include the donning and doffing of much non-unique PPE. Pay data — which came directly from Tyson — showed the amount of K-code time each individual received. Sufficient evidence existed to support a “reasonable inference” of classwide liability. Mt. Clemens, 328 U.S. at 687, 66 S.Ct. 1187.
Tyson asserts that even if sufficient evidence supported damages, plaintiffs’ claims still fail because it is uncertain if any uncompensated work was performed, *800 citing Carmody v. Kansas City Board of Police Commissioners, 713 F.3d 401, 406 (8th Cir.2013) (“Anderson [v. Mt. Clemens Pottery Co.] only applies where the existence of damages is certain.... Anderson allows uncertainty only for the amount of damages”). In Carmody, the plaintiffs did not “produce[ ] evidence indicating any hours worked over forty hours per week ... were never paid.” Id. The plaintiffs “did not provide any evidence of actual damages because the testimony contained no reference to overtime hours that violated the FLSA.” Id. at 407. Here, Tyson stipulates that “workers at the Storm Lake plant tend to work a significant amount of overtime on a weekly basis.” Plaintiffs show uncompensated overtime work by applying average donning, doffing, and walking times to employee timesheets. The evidence is “susceptible to [the] reasonable inference” that the jury’s verdict is correct. Troknya v. Cleveland Chiropractic Clinic, 280 F.3d 1200, 1206 (8th Cir.2002).[6]
The judgment is affirmed.

. The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa. The case was later transferred to the Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

. See Salazar v. Agriprocessors, Inc., 527 F.Supp.2d 873, 884 (N.D.Iowa 2007) (finding, in a similar donning and doffing case, that "there is no novel issue of state law in the IWPCL Claim, nor is there a difference in the terms of proof required by the FLSA Claim and the IWPCL Claim. There are no issues of first impression in the IWPCL Claim that the Iowa courts would be better suited to answer. ... [T]he substance and basis of the FLSA Claim and the IWPCL Claim is virtually indistinguishable, that is, the claims involve identical facts and highly similar legal theories.”) (internal quotations removed). See generally Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 425 (D.C.Cir.2006) (finding “state law claims essentially replicate the FLSA claims” in an overtime case).

. The district court conditionally certified the FLSA class, and many employees opted in. See Genesis Healthcare Corp. v. Symczyk, - U.S.-, 133 S.Ct. 1523, 1530, 185 L.Ed.2d 636 (2013) (finding that "employees ... become parties to a collective action ... by filing written consent with the court” after conditional certification). While the district court never revisited the conditional certification, the parties treat the FLSA certification as unconditional.

. FLSA collective actions and Rule 23 class actions have separate procedures, such as the “opt in” requirement to an FLSA collective *797 action and the "opt out” requirement for a Rule 23 class action. See Symczyk, 133 S.Ct. at 1529 (finding Rule 23 precedent inapposite when .considering the mootness of an FLSA action with no "opt in” parties). Contrary to the dissent’s statement, the Supreme Court in Symczyk did not find that these actions "may not be procedurally homogenized for trial” or "do not lend themselves to inextricably intertwined trials.” Neither party complains of procedural error from “homogenizing” the claims at trial.

. The dissent says that the class fails because commonality under Rule 23 “requires ... that all class members suffered the same injury,” and that "the locution ‘injury’ includes the measure of a class member's individual damages.” Individual damage calculations, however, are permissible if they do not "overwhelm questions common to the class.” Comcast, 133 S.Ct. at 1433. The district court found the differences between gang-time employees "small” and allowed individual damage calculations based on undisputed employee timesheets. This was not an abuse of discretion.

. Tyson also argues that the jury failed to follow the directions of plaintiffs’ damages expert, who testified that the jury could choose only “all or nothing’’ of her model. A jury is not required to follow an expert’s conclusion. See Children’s Broad. Corp. v. The Walt Disney Co., 357 F.3d 860, 866 (8th Cir.2004).