# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1216

_____

Matt Luiken; Jon Sandquist, on behalf of
themselves, all others similarly situated,
and the Proposed Minnesota Rule 23 Class

*Plaintiffs - Appellees*

v.

Domino's Pizza, LLC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2012
Filed: February 4, 2013

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The district court certified a Rule 23(b)(3) class of about 1,600 Minnesota delivery drivers employed by Domino's Pizza LLC between March 6, 2006, and February 28, 2010. The drivers allege that, under Minnesota law, a fixed delivery

charge that customers paid Domino's was a gratuity wrongfully withheld from them. This court granted an interlocutory appeal and now reverses the class certification.

I.

In 2005, Domino's implemented a flat $1 per-delivery charge (raised to $1.50 in 2008) in Minnesota. The drivers received no portion of it. Some explained this to customers, others did not. Disclosure varied by method of order; online purchasers were alerted that "Delivery charge will apply," and employees taking orders were supposed to say the same. Delivered boxes included a statement of charges listing the delivery charge as "Del Charge." Credit card receipts requiring signatures included a blank line for tips; the delivery charge was included in the pre-tip "Amount" line. The delivery charge was sometimes disproportionate for a tip (as it was not a percentage-based gratuity). At the end of 2009, Domino's began printing on some boxes, "Any Delivery Charge is not a tip paid to your driver. Please reward your driver for awesomeness."

II.

Rule 23 authorizes classes that meet requirements of numerosity, commonality, typicality, and fair and adequate representation. **Fed. R. Civ. P. 23**. "The district court is accorded broad discretion to decide whether certification is appropriate, and we will reverse only for abuse of that discretion." *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012). "The district court's rulings on issues of law are reviewed *de novo*, and the court abuses its discretion if it commits an error of law." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). "The preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Id.* at 567. "In order to obtain class certification,

a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

A.

Under Minnesota law, "any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee." **Minn. Stat. § 177.24 Subdiv. 3**.

> "Gratuities" means monetary contributions received directly or indirectly by an employee from a guest, patron, or customer for services rendered and includes an obligatory charge assessed to customers, guests or patrons which might reasonably be construed by the guest, customer, or patron as being a payment for personal services rendered by an employee and for which no clear and conspicuous notice is given by the employer to the customer, guest, or patron that the charge is not the property of the employee.

**Minn Stat. § 177.23 Subdiv. 9**.

> [O]bligatory charges which might reasonably be construed by the guest, customer, or patron as a sum to be given to an employee as payment for personal services rendered, include, but are not limited to, service charges, tips, gratuities, and/or surcharges which are included in the statement of charges given to the customer.

**Minn. R. 5200.0080 Subpara. 4a**.

Luiken, the class representative, argues that the delivery charge is a gratuity under Minnesota law, and thus his sole property. He believes that under Rule 5200.0080, the delivery charge is a "service charge" or "surcharge" included in the

statement of charges, and thus by definition an obligatory charge "which might reasonably be construed . . . as payment for personal services." Luiken alternatively asserts that the nature of the charge itself shows that it "might reasonably be construed" as such a payment. He reasons that it is therefore a gratuity under Section 177.23 unless Domino's provides "clear and conspicuous notice . . . that the charge is not the property of the employee." Because Domino's did not provide the statutorily-defined notice, Luiken concludes it must pay the delivery charge to the drivers under Section 177.24.

Under Luiken's interpretation, context of specific transactions is irrelevant; the key is only whether notice was given. To the contrary, the plain language of the statute and rule indicate that context matters. Rule 5200.0080 lists service charges and surcharges as examples of "obligatory charges which might reasonably be construed by the guest, customer, or patron . . . as payment for personal services." This does not mean that they must be so construed. The statute and rule's use of "the" – "which might reasonably be construed by *the* guest, customer, or patron . . ." – indicates that they refer to someone specific. *See **Flandreau Santee Sioux Tribe v. United States***, 197 F.3d 949, 952 (8th Cir. 1999) (the "use of 'the person' refers to someone specific"); ***State v. Hohenwald***, 815 N.W.2d 823, 830 (Minn. 2012) ("The definite article 'the' is a word of limitation that indicates a reference to a specific object."). The customer's circumstances determine whether the delivery charge might reasonably be construed as a payment for personal services. If, for example, Luiken explained to the customer that the delivery charge was not a gratuity (as he sometimes did), that customer could not reasonably believe otherwise – and no notice would be required.

B.

The parties agree that liability under the statute and rule is based on an objective, reasonable person standard. As this court explained in *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), context can be critical in applying such a standard. There, a couple who bought retirement annuities sought to bring a class action against the seller (Northern, later merged with Reliastar) for a misleading rate-setting practice. This court concluded that evidence common to the class could not establish liability to the class because "Reliastar would be entitled to introduce evidence about how the contract was explained in various sales discussions and whether each purchaser's understanding of the contract was consistent with the theory the Avritts now advance." *Avritt*, 615 F.3d at 1030. In response to the Avritts' claim that Northern breached the implied covenant of good faith and fair dealing, this court explained, "Whether Northern acted in bad faith by emphasizing its non-guaranteed interest rate for new deposits and encouraging purchasers to believe that the introductory rate was indicative of future rates is a question closely tied to the circumstances of each individual plaintiff." *Id.* at 1031.

> The Avritts cite several cases for the proposition that the extent of the duty of good faith and fair dealing is defined by objectively reasonable conduct, but their argument misses the point that *what is objectively reasonable depends on the nature and context of the parties' bargain* . . . . The district court properly concluded that evidence of the parties' justified expectations would be required to establish a breach of the duty of good faith and fair dealing. And those expectations are likely to vary among members of the putative class based on, among other things, each purchaser's individual interaction with sales agents.

*Id.* at 1032 (emphasis added).

The *Avritt* analysis applies in this case. Some pizza customers asked about the charge and some did not; some employees volunteered that it was not a gratuity and some did not. Those circumstances determine the objective reasonableness of construing the charge as a payment for personal services. This court has previously rejected certification of classes where trial would require considering varied circumstances. *See* **In re St. Jude Med., Inc.**, 522 F.3d 836, 838-42 (8th Cir. 2008) (reversing grant of certification where class included patients to whom different representations about prosthetic heart valve had been made and where resolution of defendant's liability was dominated by individual issues requiring "plaintiff-by-plaintiff determinations"); **Darms v. McCulloch Oil Corp.**, 720 F.2d 490, 493 (8th Cir. 1983) (affirming denial of class certification where transactions involved different representations and degrees of reliance "and the defenses raised in the case would necessarily vary based on the circumstances of each purchase").

Luiken fails to distinguish *Avritt.* He claims that this court effectively applied a subjective standard there, holding that the parties' *actual* expectations "are essential to a determination of whether a defendant's conduct is objectively reasonable under Washington common law." The "justified expectations" in *Avritt* were the expectations justified by the contract's terms and the salesperson's representations. Determining what expectations were justified required applying an objective standard to the context of the transaction. *See Avritt*, 615 F.3d at 1032 ("[W]hat is objectively reasonable depends on the nature and context of the parties' bargain."). In *Avritt,* the common question was "a question closely tied to the circumstances of each individual plaintiff." *Id.* at 1031. The same is true here. Luiken erroneously concludes that because Domino's "admits that Minn. Stat. § 177.23 *does not* require Plaintiffs to show evidence of customers' actual, subjective beliefs, *Avritt* is inapposite." It is true that, as the district court noted, it is not tasked with deciding "whether the fact-specific circumstances articulated by Domino's resulted in a customer's *actual* belief

that the delivery charge was not a tip for the delivery driver," but the court is tasked with applying the reasonable customer standard in context.

C.

Minnesota decisions confirm that under the statute and rule, context matters in determining whether customers might reasonably construe an obligatory charge as a payment to employees for personal services rendered. *See **In re Alleged Labor Law Violation of Chafoulias Mgmt. Co.***, 572 N.W.2d 326 (Minn. Ct. App. 1997) [hereinafter *Chafoulias*]; ***In re Alleged Labor Law Violation of Gangelhoff Inv., Inc.***, Minn. OAH Docket No. 5-1900-7252-2 (Apr. 28, 1993) [hereinafter *Gangelhoff*] (unpublished).

In *Gangelhoff*, a hotel billed an obligatory 33% "banquet service charge," giving 60% to servers and 40% to other employees. ***Gangelhoff*** at 1, 3. The servers claimed that the entire amount was a gratuity rightfully theirs. ***Id.*** at 3-4. Based on the context, the ALJ held that it was not a gratuity owed solely to the servers, explaining that it might be "in the more common case where other hotel surcharges are on the order of 15%, but it strains credulity to assert that customers in this rural area thought the 33% fee was a mandatory unshared tip for a few direct servers." ***Id.*** at 6. The ALJ added that because the servers had not "proven by a preponderance of the evidence that the Respondent's patrons misunderstood the purpose of the surcharge or that they reasonably could have done so, no notice was needed." ***Id.*** at 6.

In *Chafoulias*, a hotel appealed from an administrative decision that it wrongfully withheld gratuities from employees. ***Chafoulias***, 572 N.W.2d 326. The hotel imposed a 16% service charge on banquet customers, broken down in the bill into a 12% "banquet service fee" and a 4% "service charge." ***Id.*** at 328. It did not

tell customers that only 9.6% went to employees.  *Id.*  The court found that the 12% fee was a gratuity owed the employees, distinguishing *Gangelhoff* by its context: "Here, the amount in question is 12%, well within the normal range for a tip."  *Id.* at 330.  Though neither *Gangelhoff* nor *Chafoulias* rely on employee interactions with customers, the point is that circumstances matter.  Further, the key circumstances in both those cases are also present here:  Domino's delivered to diverse areas and the delivery charge was sometimes within the normal range for a tip, but sometimes well outside it.

## D.

Because Luiken errs in concluding that context is irrelevant to the statute and rule, the rest of his arguments fail.  He argues that verbal communication by Domino's employees would not satisfy the regulatory definition of "clear and conspicuous notice."  *See* **Minn. R. 5200.0080, Subpara. 4b** (imposing requirements for "clear and conspicuous" notice that the obligatory charge is not a gratuity).  That is true, but notice is relevant only if the charge is the type that might reasonably be construed as a payment for personal services in the transaction's circumstances.

Luiken contests the workability of a context-based interpretation of the statute, arguing, "If a determination of how a customer 'might reasonably construe' a given charge cannot be made until after each and every transaction is complete, the clear and conspicuous notice provision of the statute could never be utilized."  The provision is in fact utilized, as part of what Luiken labels a "two-step analysis":  first, a court determines whether the charge might reasonably be construed as a payment for personal services.  If so, the court then analyzes any notice.

Luiken argues that a context-based application overly emphasizes tips.  He contends that the question is not whether the customers might reasonably believe the

delivery charge is a tip, but whether they might reasonably believe it is a non-tip gratuity for "personal services rendered," such as compensating the driver for using a personal car. True, more than tips are "obligatory charges" under Section 177.23. *See* **Minn. R. 5200.0080 Subpara. 4a** ("obligatory charges . . . include, but are not limited to, service charges, tips, gratuities, and/or surcharges"). However, tips are expressly mentioned, so contextual factors still affect how customers construe the charge. *Chafoulias* and *Gangelhoff* deal with charges labeled "service charge" and "service fee," yet analyze the charges as tips. Most problematic for Luiken is that even if his interpretation were correct, some drivers explicitly told customers that the charge went to Domino's or that it was not a gratuity. Luiken himself told some customers, "There's this delivery charge, but it's not – that's not actually a gratuity." Those customers could not then reasonably believe it was.

E.

Because varying circumstances guide the statutory standard, the certified class does not meet the requirement of commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" ***Wal-Mart Stores, Inc. v. Dukes***, 131 S. Ct. 2541, 2551 (2011), *quoting* ***Gen. Tel. Co. of Sw. v. Falcon***, 457 U.S. 147, 157 (1982).

> [The plaintiffs'] claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

***Dukes***, 131 S. Ct. at 2551.

In *Dukes*, Wal-Mart appealed the class certification of female employees seeking damages for discriminatory promotion practices. ***Dukes***, 131 S. Ct. at 2549. Local managers generally had discretion to make pay and promotion decisions. ***Id.*** at 2547. The Court concluded that "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions." ***Id.*** at 2554. The Court explained that the plaintiffs did not identify "a common mode of exercising discretion that pervades the entire company." ***Id.*** at 2554-55.

Similarly, whether this type of charge might reasonably be construed as a payment for personal services in one transaction does not determine whether it might reasonably be construed that way in another transaction. No decisive context pervades Domino's Minnesota deliveries. In *Dukes*, the Court approved Chief Judge Kozinski's summary of the differences among proposed class members' circumstances. ***Id.*** at 2557, *quoting **Dukes v. Wal-Mart Stores, Inc.***, 603 F.3d 571, 652 (9th Cir. 2010) (Kozinski, C.J., dissenting). Domino's offers a similar summary of differences in delivery transactions. Those differences affect the reasonableness of construing the delivery charge as a gratuity. Under *Dukes*, the district court here erred in finding commonality, because the varied circumstances of deliveries prevent "one stroke" determination.

The cases Luiken cites in response to *Dukes* are inapplicable or distinguishable. None of their differences from *Dukes* are analogous here. In *Gray v. Hearst Communications, Inc.*, 444 F. Appx. 698 (4th Cir. 2011), purchasers of phone directory advertising space alleged that the directory misrepresented the extent of its distribution. The court found that differences in representations did not prevent commonality because each contract contained the same distribution obligation. ***Id.*** at 701. Certification was upheld because whether the defendant breached that

obligation could be resolved in one stroke. *Id.* at 702. Luiken argues that the similarly decisive question here is whether Domino's provided the statutorily-defined notice. That question would be dispositive only if the delivery charge might reasonably be construed as a payment for personal services. *Gray* is inapplicable because the context determines the reasonableness of construing the delivery charge as a gratuity.

Luiken cites *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011) (en banc), *cert. denied* 132 S. Ct. 1876 (2012), for his proposition that "the focus at certification should be on the defendant's conduct and whether that conduct was the same as to all class members." He again ignores the statute's emphasis on whether the charge might reasonably be construed as a payment for personal services and asserts that Domino's was obligated to provide the statutorily-defined notice. Contrary to his assertion, Domino's conduct across the class differed in critical ways (depending on the context under Section 177.24's objective reasonable person standard). Some of Domino's employees told customers the charge was not a gratuity, but some did not. Luiken also asserts that "*Sullivan* merely requires a class proponent to show that she will meet 'certain elements' of her claim through common proof." *See id.* at 305. The common proof Luiken offers is the lack of notice, but the issue of notice is part of the second step in applying the statute. It is not an absolute requirement; first, the charge must be one that might reasonably be construed as a payment for personal services. Because the lack of notice is not dispositive, *Sullivan* does not apply.

Luiken also misapplies *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012). There, the plaintiffs alleged that Charter One enforced an unofficial policy denying overtime pay. *Ross*, 667 F.3d at 903. That common claim is different from Luiken's. The common question – whether the defendant had an unofficial company policy forcing plaintiffs to perform duties for which they were entitled to overtime –

-11-

had a common answer capable of resolution in one stroke. That was true despite the "slight variations" between different locations. ***Ross***, 667 F.3d at 909-10. Here, there is no question resolvable by a single determination.

Certification of a Rule 23(b)(3) class also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." **Fed. R. Civ. P. 23(b)(3)**. The rule "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem Products, Inc. v. Windsor***, 521 U.S. 591, 623 (1997). It is "far more demanding" than the requirement of commonality. ***Id.*** at 623-24.

> When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class. While limited in scope, this analysis should also be rigorous.

***In re Zurn Pex Plumbing Prod. Liab. Litig.***, 644 F.3d 604, 618 (8th Cir. 2011) (internal citations and quotation marks omitted). Common evidence cannot make out a prima facie case for this class.

III.

Domino's argues that the certified class violates Article III standing requirements and the Rules Enabling Act. Because the class certification is unsustainable under Rule 23, there is no need to consider those arguments. *See **In re St. Jude Med.***, 522 F.3d at 841.

## IV.

The varied context of the transactions made it unreasonable for some customers to construe the delivery charge as a payment for personal services, thereby preventing one-stroke determination of a classwide question. The district court abused its discretion by certifying the class.

This court reverses the class certification order of the district court and remands for further proceedings consistent with this opinion.

_____