# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3753

_____

Peg Bouaphakeo; Javier Frayre; Jose A. Garcia; Mario Martinez; Jesus A. Montes; Heribento Renteria, on behalf of themselves and all other similarly situated individuals

*Plaintiffs - Appellees*

v.

Tyson Foods, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: February 11, 2014
Filed: August 25, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Peg Bouaphakeo and other named plaintiffs are employees of Tyson Foods, Inc. They represent a class of employees at Tyson's meat-processing facility in Storm Lake, Iowa. They sued Tyson for not paying wages due under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., and the Iowa Wage Payment

Collection Law (IWPCL), Iowa Code 91A.1 et seq. A jury returned a verdict for the class. Tyson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The employees are current and former "gang-time" employees at Tyson's facility. The background is similar to that in *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 873-75 (8th Cir. 2012) (adapted to the facts of this case):

> To calculate the employees' compensable working time, Tyson measures "gang time"—when the employees are at their working stations and the production line is moving. The employees claim Tyson failed to provide FLSA overtime compensation for donning (putting on) personal protective equipment (PPE) and clothing before production and again after lunch, and for doffing (taking off) PPE and clothing before lunch and again after production. The PPE and clothing worn by individual employees vary depending on their role in the process. Tyson classifies items of PPE and clothing as either "unique" or "non-unique" to the meat-processing industry. . . . The employees also seek compensation for transporting the items from lockers to the production floor.
>
> In addition to "gang time," Tyson adds "K-code" time to each employee's paycheck. Before 2007, Tyson paid four minutes of K-code time per day to each [employee in a department where knives were used] in order to compensate for the donning and doffing of unique items. From [February] 2007 to [June] 2010, Tyson added [several minutes] per day for pre-and post-shift walking time required of the employee. . . . Tyson does not record the actual time that employees perform any of these tasks.
>
> . . . .
>
> The FLSA prohibits the employment of any person "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less

-2-

than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). An employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84; *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011). "Neither 'work' nor 'workweek' is defined in the statute." *Alvarez*, 546 U.S. at 25. At one time, the Supreme Court defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84. The Court then "clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA." *Alvarez*, 546 U.S. at 25, *citing Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Whether an employee's activity is "work" does not end the compensability analysis. In the Portal-to-Portal Act, Congress excluded some activities that might otherwise constitute work from the FLSA. The Act excepts two categories:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a); *Alvarez*, 546 U.S. at 26-28. "[A]ctivities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are *an integral and*

-3-

*indispensable part of the principal activities* for which covered workmen are employed and are not specifically excluded by [29 U.S.C. § 254(a)(1)]." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (emphasis added). And, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)]." *Alvarez*, 546 U.S. at 37.

The Department of Labor has a "continuous workday rule," generally defining an employee's "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b); *Alvarez*, 546 U.S. at 29, 37 (describing and applying the continuous workday rule). During the continuous workday, the compensability of all activities that otherwise satisfy the requirements of the FLSA is not affected by the Portal-to-Portal Act's exceptions. In *Alvarez*, the Supreme Court held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA." *Alvarez*, 546 U.S. at 37.

The employees sued in 2007, claiming that Tyson's K-code time was insufficient to cover compensable pre- and post-production line activities, violating the FLSA and IWPCL. The district court[1] certified the FLSA claim as a collective action and the IWPCL claim as a Rule 23 class action.[2] During a nine-day trial,

---

[1] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa. The case was later transferred to the Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[2] *See* **Salazar v. Agriprocessors, Inc.**, 527 F. Supp. 2d 873, 884 (N.D. Iowa 2007) (finding, in a similar donning and doffing case, that "there is no novel issue of state law in the IWPCL Claim, nor is there a difference in the terms of proof required by the FLSA Claim and the IWPCL Claim. There are no issues of first impression in the IWPCL Claim that the Iowa courts would be better suited to answer. . . . [T]he substance and basis of the FLSA Claim and the IWPCL Claim is virtually

plaintiffs proved liability and damages by using individual timesheets, along with average donning, doffing, and walking times calculated from 744 employee observations. The jury returned a verdict for the class of $2,892,378.70. With liquidated damages, the final judgment totaled $5,785,757.40.

## II.

Tyson argues that the district court erred in certifying the FLSA collective action—under 29 U.S.C. § 216(b)—and the IWPCL class—under Rule 23.[3] Class certification is reviewed for abuse of discretion. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010) (reviewing class certification under Rule 23 for abuse of discretion); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court."). A district court may certify a class under Rule 23(b) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **Fed. R. Civ. P. 23(b)**. The FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated." **29 U.S.C. § 216(b)**. Plaintiffs may be similarly

indistinguishable, that is, the claims involve identical facts and highly similar legal theories.") (internal quotations removed). *See generally* ***Lindsay v. Gov't Emps. Ins. Co.***, 448 F.3d 416, 425 (D.C. Cir. 2006) (finding "state law claims essentially replicate the FLSA claims" in an overtime case).

[3]The district court conditionally certified the FLSA class, and many employees opted in. *See* **Genesis Healthcare Corp. v. Symczyk**, 133 S. Ct. 1523, 1530 (2013) (finding that "employees . . . become parties to a collective action . . . by filing written consent with the court" after conditional certification). While the district court never revisited the conditional certification, the parties treat the FLSA certification as unconditional.

situated when "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." ***O'Brien v. Ed Donnelly Enters., Inc.***, 575 F.3d 567, 585 (6th Cir. 2009). A court may consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." ***Thiessen v. Gen. Elec. Capital Corp.***, 267 F.3d 1095, 1103 (10th Cir. 2001).[4]

According to Tyson, factual differences between plaintiffs—differences in PPE and clothing between positions, the individual routines of employees, and variation in duties and management among departments—make class certification improper. These differences, Tyson says, do not allow the class action to "generate common *answers* apt to drive the resolution of the litigation." ***Wal-Mart Stores, Inc. v. Dukes***, 131 S. Ct. 2541, 2551 (2011). *See* ***Luiken v. Domino's Pizza, LLC***, 705 F.3d 370, 374-76 (8th Cir. 2013) (applying *Dukes* and reversing certification when the interaction between individual customers and employees meant liability was "dominated by individual issues"); ***Bennett v. Nucor Corp.***, 656 F.3d 802, 815 (8th Cir. 2011) (denying certification when there were "stark inter-departmental variations in job titles, functions performed, and equipment used"). Unlike *Dukes*, Tyson had a specific company policy—the payment of K-code time for donning, doffing, and walking—that applied to all class members. Unlike *Dukes*, class members worked at the same plant and used similar equipment. The time study showed that donning

---

[4]FLSA collective actions and Rule 23 class actions have separate procedures, such as the "opt in" requirement to an FLSA collective action and the "opt out" requirement for a Rule 23 class action. *See* ***Symczyk***, 133 S. Ct. at 1529 (finding Rule 23 precedent inapposite when considering the mootness of an FLSA action with no "opt in" parties). Contrary to the dissent's statement, the Supreme Court in *Symczyk* did not find that these actions "may not be procedurally homogenized for trial" or "do not lend themselves to inextricably intertwined trials." Neither party complains of procedural error from "homogenizing" the claims at trial.

and doffing all equipment, plus walking, took an average of 18 minutes in the fabrication department and 21 minutes in the kill department. True, applying Tyson's K-code policy and expert testimony to "generate . . . answers" for individual overtime claims did require inference, but this inference is allowable under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (allowing liability based on "just and reasonable inference" when complete records do not exist). While individual plaintiffs varied in their donning and doffing routines, their complaint is not "dominated by individual issues" such that "the varied circumstances . . . prevent 'one stroke' determination." **Luiken**, 705 F.3d at 374, 376, *quoting* **Dukes**, 131 S. Ct. at 2551. The district court did not abuse its discretion in certifying the class.

Tyson also contends that the class should be decertified because evidence at trial showed that some class members did not work overtime and would receive no FLSA damages even if Tyson under-compensated their donning, doffing, and walking. *See* **In re Zurn Pex Plumbing Prods. Liab. Litig.**, 644 F.3d 604, 616 (8th Cir. 2011) ("A district court may not certify a class . . . 'if it contains members who lack standing.'"), *quoting* **Avritt**, 615 F.3d at 1034; **Blades v. Monsanto Co.**, 400 F.3d 562, 571 (8th Cir. 2005) (when "not every member of the proposed classes can prove with common evidence that they suffered impact from the alleged conspiracy . . . damages to all class members must be shown to justify the class action"). *Cf.* **Espenscheid v. DirectSat USA, LLC**, 705 F.3d 770, 774 (7th Cir. 2013) (finding certification improper when piece-rate system varied pay from worker-to-worker, use of an average conferred a "windfall" on some class members, and employees had incentive to under-report time). Tyson exaggerates the authority for its contention. *See* **Comcast Corp. v. Behrend**, 133 S. Ct. 1426, 1433 (2013) (allowing variation in damages unless "individual damage calculations . . . overwhelm questions common to the class"); **Amgen Inc. v. Connecticut Ret. Plans & Trust Funds**, 133 S. Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, *not that those questions will be answered, on the merits*, in favor of the class.") (second emphasis added); **DeBoer v. Mellon Mortg. Co.**, 64 F.3d 1171,

1174 (8th Cir. 1995) ("The fact that individuals . . . will have . . . claims of differing strengths does not impact on the commonality of the class as structured."); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop.").[5]

At any rate, at Tyson's request, the jury was instructed, "Any employee who has already received full compensation for all activities you may find to be compensable is not entitled to recover any damages." Tyson's instruction directed the jury to treat plaintiffs with no damages as class members. It is "fundamental that where the defendant . . . 'invited error' there can be no reversible error." *United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000), *quoting United States v. Steele*, 610 F.2d 504, 505 (8th Cir. 1979).

---

[5]The dissent says that the class fails because commonality under Rule 23 "requires . . . that all class members suffered the same injury," and that "the locution 'injury' includes the measure of a class member's individual damages." Individual damage calculations, however, are permissible if they do not "overwhelm questions common to the class." *Comcast*, 133 S. Ct. at 1433. The district court found the differences between gang-time employees "small" and allowed individual damage calculations based on undisputed employee timesheets. This was not an abuse of discretion.

## III.

Tyson believes that plaintiffs improperly relied on a formula to prove liability. In *Dukes*, the Supreme Court disapproved of "Trial by Formula."

> A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery—without further individualized proceedings.

*Dukes*, 131 S. Ct. at 2561. Here, plaintiffs do not prove liability only for a sample set of class members. They prove liability for the class as a whole, using employee time records to establish individual damages. Using statistics or samples in litigation is not necessarily trial by formula. *See **Comcast***, 133 S. Ct. at 1434 (considering expert's multiple-regression model); ***Perez v. Mountaire Farms, Inc.***, 650 F.3d 350, 372 (4th Cir. 2011) (favoring "a calculation based on the summation of mean times" to represent "the amount of time that employees working at the plant actually spend donning and doffing"). *Cf. **Martinez v. Ryan***, 132 S. Ct. 1309, 1325 n.5 (2012) (relying on "a sample of federal habeas cases").

Plaintiffs do rely on inference from average donning, doffing, and walking times, but they apply this analysis to each class member individually. Using this representative evidence is comparable to a jury applying testimony from named plaintiffs to find classwide liability. *See ***Fed. R. Civ. P. 23*** (allowing representative parties when their claims "are typical of the claims or defenses of the class" and they "fairly and adequately protect the interests of the class"). For the donning, doffing, and walking in *Mt. Clemens*, testimony from eight employees established liability for 300 similarly situated workers. *Mt. Clemens*, 328 U.S. at 684; ***Mt. Clemens Pottery***

*Co. v. Anderson*, 149 F.2d 461, 462 (6th Cir. 1945) (discussing testimony). To prove damages, the Court remanded for "the determination of the amount of walking time involved and the amount of preliminary activities performed" based on "whatever reasonable inferences can be drawn from the employees' evidence." *Mt. Clemens*, 328 U.S. at 693-94.

Tyson claims that plaintiffs presented insufficient evidence to prove damages classwide. *See Murray v. Stuckey's, Inc.*, 939 F.2d 614, 621 (8th Cir. 1991) ("[P]laintiffs' evidence failed to show, *for each individual plaintiff*, 'that he has in fact performed work for which he was improperly compensated.'"), *quoting Mt. Clemens*, 328 U.S. at 687; *Marshall v. Truman Arnold Distrib. Co., Inc.*, 640 F.2d 906, 911 (8th Cir. 1981) (requiring further evidence from non-testifying employees before awarding damages when earnings projections were substantially rebutted by cross-examination). *Cf. Dukes*, 131 S. Ct. at 2560 (requiring "individualized determinations of each employee's eligibility for backpay" as a procedural prerequisite for certification under Title VII). This court "will not reverse a jury verdict for insufficient evidence unless 'after viewing the evidence in the light most favorable to the verdict, [it concludes] that no reasonable juror could have returned a verdict for the non-moving party.'" *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 497 (8th Cir. 1998), *quoting Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (en banc). *See Sandifer v. United States Steel Corp.*, 134 S. Ct. 870, 880 (2014) (agreeing "with the basic perception of the Courts of Appeals that it is most unlikely Congress meant [the FLSA] to convert federal judges into time-study professionals"). Tyson has no evidence of the specific time each class member spent donning, doffing, and walking. "[W]hen an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented." *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997), *quoting Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992) (allowing "pattern or practice" evidence when defendant provided "self-serving,

unsubstantiated approximations" of employee hours), *citing **Mt. Clemens***, 328 U.S. at 687-88.

To prove damages, plaintiffs use individual timesheets, along with average times calculated from a sample of 744 observations of employee donning, doffing, and walking. Plaintiffs' expert testified that the sample was large for this type of study, representative, and approximately random. He testified that the study used "accepted procedure in industrial engineering." Tyson's Director of Human Resources testified that K-code time did not include the donning and doffing of much non-unique PPE. Pay data—which came directly from Tyson—showed the amount of K-code time each individual received. Sufficient evidence existed to support a "reasonable inference" of classwide liability. ***Mt. Clemens***, 328 U.S. at 687.

Tyson asserts that even if sufficient evidence supported damages, plaintiffs' claims still fail because it is uncertain if any uncompensated work was performed, citing *Carmody v. Kansas City Board of Police Commissioners*, 713 F.3d 401, 406 (8th Cir. 2013) ("*Anderson* [*v. Mt. Clemens Pottery Co.*] only applies where the existence of damages is certain. . . . *Anderson* allows uncertainty only for the amount of damages."). In *Carmody*, the plaintiffs did not "produce[] evidence indicating any hours worked over forty hours per week . . . were never paid." ***Id.*** The plaintiffs "did not provide any evidence of actual damages because the testimony contained no reference to overtime hours that violated the FLSA." ***Id.*** at 407. Here, Tyson stipulates that "workers at the Storm Lake plant tend to work a significant amount of overtime on a weekly basis." Plaintiffs show uncompensated overtime work by applying average donning, doffing, and walking times to employee timesheets. The

evidence is "susceptible to [the] reasonable inference" that the jury's verdict is correct. ***Troknya v. Cleveland Chiropractic Clinic***, 280 F.3d 1200, 1206 (8th Cir. 2002).[6]

\* \* \* \* \* \* \*

The judgment is affirmed.

BEAM, Circuit Judge, dissenting.

For two independent but somewhat factually related reasons, this case should be reversed, remanded and dismissed. First, under the circumstances of this litigation, neither the putative Fair Labor Standards Act (FLSA) collective action (the so-called federal class) nor the purported Iowa Wage Payment Collection Law (IWPCL) Rule 23(b)(3) class (the so-called state class) were eligible for class certification, either as a matter of fact or a matter of law. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 583-84 (6th Cir. 2009); Thiessen v. General Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001). Second, Rule 23 state-law-based class actions are fundamentally different than collective actions authorized under the FLSA and may

---

[6]Tyson also argues that the jury failed to follow the directions of plaintiffs' damages expert, who testified that the jury could choose only "all or nothing" of her model. A jury is not required to follow an expert's conclusion. *See **Children's Broad. Corp. v. The Walt Disney Co.***, 357 F.3d 860, 866 (8th Cir. 2004).

not be procedurally homogenized for trial as done in this case.[7] Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1529 (2013).

## I.    BACKGROUND

This litigation generally involves hourly production employees of Tyson Foods at its Storm Lake, Iowa, meat-processing facility. But, the dispute more basically involves six named (lead) plaintiff employees from the kill, cut and retrim departments of the Storm Lake operation who were paid their wages using, in part, Tyson's "gang-time" compensation system but who also claim to have been owed overtime pay resulting from disparate compensable work activities occurring at times other than while earning daily "gang time" kill, cut and retrim department production line compensation. The six attempt to assert two separate collective actions–a federal statutory action asserting violations of the FLSA, 29 U.S.C. §§ 201-219, and a state statutory action separately based upon the IWPCL, Iowa Code Chapter 91A.

This case was originally assigned to the Honorable Mark Bennett who *conditionally* "certified" a federal collective action class pursuant to 29 U.S.C. § 216(b) and a purported IWPCL state law class pursuant to Federal Rule of Civil

---

[7]In its footnote 2, the court takes issue with this observation. In support, the court cites Salazar v. AgriProcessors, Inc., 527 F. Supp. 2d 873 (N.D. Iowa 2007), and Lindsay v. Government Employees Insurance Co., 448 F.3d 416 (D.C. Cir. 2006). Although subject matter jurisdiction was not in dispute in this case, Salazar and Lindsay deal with whether a federal cause of action (the FLSA) and a state cause of action (the IWPCL) "derive" sufficiently from the same "common nucleus of operative facts" that, when joined, they form part of a case and controversy under Article III of the United States Constitution. Lindsay, 448 F.3d at 424 (quotation omitted), Salazar, 527 F. Supp. 2d at 880 (quotation omitted); See 28 U.S.C. § 1367(a). But, "case and controversy" standing is not the fundamental issue here. The question is whether the separate federal and state claims were sufficiently identical to be presented to the jury, as here, as one amalgamated cause of action. In my view, Supreme Court precedent indicates they were not.

Procedure 23(b)(3). Then, because the Honorable John Jarvey was already assigned to several comparable cases involving Tyson, including a case involving Tyson employees at Columbus Junction, Iowa, Guyton v. Tyson, No. 3:07-cv-00088-JAJ-TJS (S.D. Iowa) (a companion case on appeal), this matter was transferred to Judge Jarvey for further pretrial and post-trial proceedings and for trial. The case has now been litigated and is before this panel on appeal.

## II.    DISCUSSION

### 1.    The Classes

#### A.    The Federal FLSA Class

A collective action to recover damages permitted by the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by anyone or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

The six named lead plaintiff employees who sought to establish this collective action bore the "burden of showing that the opt-in [consenting] plaintiffs are similarly situated to the lead plaintiffs." O'Brien, 575 F.3d at 584. Judge Bennett, apparently recognizing the likely existence of numerous factors unrelated to the "gang-time" pay used to determine a given Tyson employee's regular wages–factors amply established by the evidence at trial–certified a "conditional" FLSA class consisting of employees from the kill, cut and retrim departments at the Tyson plant paid through the so-called gang-time compensation system within a discrete time period set forth in the certification. Indeed, the conditional certification related only to the three

-14-

departments and the gang-time pay earned in the production line in those departments. No other regular or overtime pay calculation factors discussed at the merits portion of the trial (such as: individual employment codes, specific duties, wage-rate variations, knife wielding protections, sanitary clothing and equipment, part-time work, illness, injury, shift differentials, and routine production line overtime) were in any way incorporated as limitations on the use of the FLSA conditional class. The record reveals that this "conditional" designation was never withdrawn or modified at any time during or after the trial. According to the joint stipulation of facts by the parties, there were 444 employees who consented to be a part of this FLSA collective action class *including the six named lead plaintiffs*.

## B.    The IWPCL State Class

"'In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met.'" Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013) (quoting Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)). Judge Bennett, at the request of the same six named plaintiffs who sought creation of and joined the FLSA collective class, ultimately certified what he termed a "modified" 3,344-person putative Rule 23 state law class consisting of all "current and former employees of Tyson's Storm Lake, Iowa, processing facility who have been employed at any time from February 7, 2005, to the present, and who are or were paid under a 'gang-time' compensation system in the Kill, Cut or Retrim departments." This certification also included no other limiting or enhancing overtime pay calculation elements. The record discloses that this certification was likewise never further embellished or modified during or after trial.

The "gang-time system of payment" as referred to by Judge Bennett and defined by the evidence is a system where employees are paid from the time their production line starts to the time their production line ends. There is no contention

by the named plaintiffs that the Storm Lake Tyson employees did not receive all wages due and owing for time worked during the production line gang-time pay periods. So, standing by itself, as it does in the class certifications, the gang-time production line classification means little in the context of proving at trial through evidence common to the class the overtime pay claims of the 3,344 members of the allegedly underpaid overtime class. Supreme Court and Eighth Circuit precedent demands otherwise. See Dukes, 131 S. Ct. at 2549-50 (discussing the requirements of class certification); see also Lopez v. Tyson Foods, Inc., 690 F.3d 869, 874 (8th Cir. 2012) (an employee who sues for unpaid overtime has the burden of proving he performed work for which he was not properly compensated).

To be certified for purposes of Rule 23(a), the collective groupings, that is the putative classes, must have been such that Tyson was positioned to assert its legitimately held common-to-the-class defenses against all members of the group who claimed to have earned unpaid overtime wages. See Fed. R. Civ. P. 23(a)(3). In this same context, the class must have been limited to Tyson employees who could and did establish entitlement to overtime pay resulting from overtime work performed during compensable time, that is, work performed at times other than production line gang-time pay periods–periods for which all class members were already routinely, regularly, and unquestionably paid by Tyson in accordance with the law.

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." Luiken, 705 F.3d at 372 (quotation omitted). While a Rule 23(b)(3) class was purportedly certified, any Rule 23 class may only be lawfully certified if the "trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Dukes, 131 S. Ct. at 2551 (quotation omitted). Actual, not presumed, conformance with Rule 23(a) remains indispensable. Id. Frequently, as in this case, "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." Id. Rule 23(a)'s four bedrock requirements are numerosity,

commonality, typicality and adequate representation (here, a named plaintiff with standing). Commonality requires the plaintiff to demonstrate at the time of the merits hearing on the underlying claim–that all class members suffered the same injury. Dukes, 131 S. Ct. at 2551. So, if the locution "injury" includes the measure of a class member's individual damages, as I believe it does, this class fails on that score alone.

The court majority apparently sees a pathway around plaintiffs' legal dilemma arising from the above-noted class formulation failures. Although acknowledging that class certification is improper when a "windfall" is conferred on some class members, ante at 7, the court makes the following observation:

> At any rate, at Tyson's request, the jury was instructed, "Any employee who has already received full compensation for all activities you may find to be compensable is not entitled to recover any damages." Tyson's instruction directed the jury to treat plaintiffs with no damages as class members. It is "fundamental that where the defendant . . . 'invited error' there can be no reversible error." United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000) (quoting United States v. Steele, 610 F.2d 504, 505 (8th Cir. 1979)).

Ante at 8.

Thus, says the court, Tyson "directed the jury to treat plaintiffs with no damages as class members." However, Tyson made no such class membership directive to the jury through its instructional request and Beason and Steele are wholly inapposite as case precedent for the court's faulty premise. The cases deal only with run-of-the-mill evidentiary matters, not waivers of legal principles. Beason simply opened the door to the making of a Bruton exception by permitting an admission from a non-testifying co-defendant, and Steele admitted otherwise inadmissible hearsay evidence to clarify and rebut an issue opened by the criminal defendant's cross-examination. Tyson, after vigorously resisting class action

-17-

formulations at every turn in this litigation, and being denied, properly requested an instruction that the plaintiffs be held to their evidentiary burdens of proof.

### C.    The Merits

Fundamentally, as previously noted, this case emerges from two separate causes of action brought through a single federal court complaint–a federal law cause of action alleging liability leading to damages arising from violation of the FLSA and a state law cause of action alleging liability and damages arising from violation of the IWPCL.  The burden of proof on all issues of statutory liability, injury and measure of damages rests squarely upon the shoulders of the named plaintiffs.  Lopez, 690 F.3d at 874.  In this case, gang-time pay is not in dispute.  The plaintiffs contend, as does the court majority, that the overtime pay dispute involves time spent by a class of Tyson employees in doffing and donning various sanitary and personal protection equipment before and after the gang-time production line work has been completed each day.

Tyson's Storm Lake employees are required to wear a different combination of sanitary and protective gear.  Those employees wearing knives to use in conjunction with their particular duties on a particular day are required to wear a combination of a plastic belly guard, mesh apron, mesh sleeve, plexiglass arm guard, mesh glove, Polar glove, membrane skinner gloves, Polar sleeves, "steel" for maintaining the knives and knife scabbards ("knife related gear").  Other workers are required to wear a hard hat, hairnet, beard net, earplugs, ear muffs, rubber or cotton gloves, and rubber or plastic aprons ("sanitary gear").

From 1998 until February 4, 2007, Tyson paid four extra minutes beyond production line time for all production employees, referred to as "K-Code" time.  From February 4, 2007, to June 28, 2010, Tyson ceased paying non-knife-wielding employees for the time donning and doffing sanitary gear.  From February 4, 2007,

-18-

to June 28, 2010, Tyson paid knife-wielding employees between 4 to 8 minutes of K-Code time, depending on the job, and employees who did not have a knife did not receive K-Code time payments.

Plaintiffs offered evidence at trial concerning a sample of putative class employees from Dr. Kenneth Mericle and Dr. Liesl Fox. Fox's calculation testimony fed off of Mericle's evidence concerning Rule 23 class damages for overtime pay. Fox testified, assuming Mericle's evidence was true, that at least 212 members of the purported class did not suffer any damages because the doffing and donning time, less the K-Code time "would not have been enough to kick them into overtime." Further, while the plaintiffs' evidence generally indicated some individual overtime damages ranging from a few cents to several thousand dollars, there were at least 509 workers whose injuries ranged from $0.27 to less than $100. And, the record discloses that the jury in returning only a single gross amount of damages verdict, as instructed, discounted plaintiffs' evidence by more than half, likely indicating that more than half of the putative class suffered either no damages or only a de minimis injury measured in cents rather than dollars. In spite of having the burden of proof, there was no evidence adduced by plaintiffs that established the number of purported class member employees fully compensated or not fully compensated by the K-Code payments already paid by Tyson. It is evident, however, that many class employees fit within each category and all were apparently included as beneficiaries of the single damages verdict returned by the jury.

Rule 23(a)(2) contemplates that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551 (quotation and citation omitted). Rather, "[t]heir claims must depend upon a common contention. . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution–which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (first alteration and italics in original) (quotation omitted). That was not the case here. While it is true that all class members were subject to a common policy–gang-time payment–there is no "common answer," arising from the evidence concerning the individual overtime pay questions at issue in this case. Thus, this case with these classes cannot be resolved in "one stroke," given the differences in donning and doffing times, K-Code payments, abbreviated gang time shifts, absenteeism, sickness, vacation and a myriad of other relevant factors. The "rigorous" analysis of class certification in this case, which overlaps with the merits as required by Dukes, 131 S. Ct. at 2551, clearly discloses that the Rule 23 class claim does not comply with either rule or precedent and should have been decertified.

Finally, the wisdom of the Supreme Court's statement in Symczyk, 133 S. Ct. at 1520, that Rule 23 class actions and collective actions under the FLSA are fundamentally different and thus do not lend themselves to inextricably intertwined trials, as here, is well dramatized by this case.[8] Here we have undifferentiated

_____

[8]In footnotes 3 and 4, the court again takes issue with this contention. Interestingly, in doing so, the court cites Symczyk, a case that clearly holds to the contrary. In Symczyk, the Supreme Court, in discussing an FLSA mootness issue and the applicability, or not, of Rule 23 class action cases to that particular question, stated: "Rule 23 actions are fundamentally different from collective actions under the FLSA." 133 S. Ct. at 1529. And then more to the point here, the Supreme Court held that although a putative class acquires "independent legal status once it is certified under Rule 23[, u]nder the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved notification to employees." Id. at 1530. Thus, the FLSA class in this case never progressed beyond "conditional" status and could not, as a matter of law, have

-20-

presentations of evidence, including significant numbers of the putative classes suffering no injury and members of the entire classes suffering wide variations in damages, ultimately resulting in a single-sum class-wide verdict from which each purported class member, damaged or not, will receive a pro-rata portion of the jury's one-figure verdict. Assuming that the district court could now re-open the proceedings in an effort to deal with an individual plaintiff's damages using the Mericle/Fox evidence, the exercise would be laborious, virtually unguided, and well outside of the limiting parameters the Supreme Court has, as a matter of law, placed upon use of the Rule 23 class action machinery.

## III.  CONCLUSION

From this result, I dissent.

_____

been joined with the supposed Rule 23 class in an actionable claim of any kind, however the parties may have chosen to treat this conditional effort, which treatment is unclear from the record.