**Peg BOUAPHAKEO, et al., Appellees**

**v.**

**TYSON FOODS, INC., Appellant.**

No. 12–3753.

United States Court of Appeals,
Eighth Circuit.

Nov. 19, 2014.

Roger K. Doolittle, Doolittle Law Firm, Jackson, MS, William Michael Hamilton, Provost & Umphrey, Nashville, TN, Richard Kaspari, Metcalf & Kaspari, Saint Paul, MN, Brian P. McCafferty, Kenney & McCafferty, Blue Bell, PA, Candis A. McGowan, Robert L. Wiggins, Jr., Wiggins & Childs, Birmingham, AL, MacDonald Smith, Smith & McElwain, Sioux City, IA, for Appellees.

Allison Balus, Steven D. Davidson, Heidi Ann Guttau–Fox, Thomas Edwin Johnson, Baird & Holm, Omaha, NE, Michael J. Mueller, Evangeline C. Paschal, Hunton & Williams, Washington, DC, Emily Burkhardt Vicente, Hunton & Williams, Los Angeles, CA, Thomas Walsh, Bryan & Cave, Saint Louis, MO, for Appellant.

## ORDER

The petition for rehearing *en banc* is denied. The petition for panel rehearing is also denied.

Chief Judge RILEY, Judge WOLLMAN, Judge LOKEN, Judge GRUENDER, and Judge SHEPHERD would grant the petition for rehearing en banc.

Judge BEAM would grant panel rehearing.

BEAM, Circuit Judge, dissenting to the denial of rehearing by the panel and rehearing by the court en banc in this matter.

As aided and abetted by this court, this dispute becomes yet another manifestation of a professionally assembled class action lurching out of control. *See generally* Review and Outlook, *Tort Blowout Preventer,* Wall St. J., Oct. 24, 2014, at A12. From the decisions of the panel and the court en banc denying rehearing, I dissent.

## I. BACKGROUND

At the outset, I include by reference my panel dissent. *Bouaphakeo v. Tyson Foods, Inc.* 765 F.3d 791, 800 (8th Cir. 2014) (Beam, J., dissenting). And, at the risk of a small measure of repetition, I review and restate a portion of the procedural and evidentiary record from the district court.

The trial court conditionally and preliminarily, but erroneously, certified a 444–person Fair Labor Standards Act (federal) class (FLSA), including the named plaintiffs, and a 3,344 Iowa (state) class, also including the named plaintiffs, all of whom are either present or former employees of Tyson's Storm Lake, Iowa, facility. The backbone of these supposed classes is Tyson's "gang time" production line. The jury was instructed that the plaintiffs make no claim for the time that they were actually on the production line, known as "gang time."

However, these gang time production line employees are required to wear an

array of safety and sanitary equipment depending upon the job function they are performing at the time and the department to which they are assigned on a given day. Use of this equipment requires pre- and post-production line working time to put on, take off and rinse, and some additional walking. Tyson agrees that actual time spent for this doffing, donning, rinsing and walking is compensable. Thus, the only issue in dispute is the temporal extent of these pre- and post-production line activities and the individual pay generated through them for each member of the putative classes.

Of course, this time/pay issue has existed well prior to commencement of this particular case, a circumstance that is fully relevant to the reasoning of the panel majority.

The parties have jointly stipulated that as early as 1998, Tyson had studied the relationship, application and compensability of the knife-connected and sanitary item use in connection with the gang time work. This study included the temporal duration of these doffing, donning, rinsing and walking activities. Without my detailing all such factors involved and applied, these time studies resulted in extra overtime pay-the so-called Tyson K-code payments. These calculations and payments were used by the classes' expert witnesses at trial, as I will later discuss in more detail. The K-code wage payments were based on one or more four- to eight-minute daily segment calculations, depending upon the department worked and the equipment used. And they were, as indicated, intended to compensate employees for the doffing, donning, rinsing and walking activities involving the protective and sanitary item equipment. These wage payments in some measure or another were paid from 1998 until at least June 28, 2010, well within the time frame of this action.

Accordingly, contrary to the panel opinion's statements and inferences, there is no issue of "liability"[1] for overtime pay, if earned—the sole issue before the court at this point is a jury's determination, upon proper instructions on the law, of individual compensatory damages,[2] if any, for each member of the putative classes and the entry of a final judgment that, upon execution,[3] results in individual wage payments to all lawfully certified members of a lawfully assembled class. In short, under binding precedent of the Supreme Court and this court, if an employee suffers no damages by way of unpaid wages, he or she is not a proper member of an alleged federal or state class and the employer has no liability for such a class claim asserted by an employee or his or her named plaintiff representatives. *Blades v. Monsanto Co.,* 400 F.3d 562, 571 (8th Cir.2005) ("[D]amages to all class members must be shown to justify the class action."). Here, because the class representative's evidence clearly shows that numerous members of the certified putative classes suffer no damages, there is neither a legally certified class nor a final judgment that can lead to individual wage loss payments to any class member. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 & n. 15, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Rule

---

**1.** Liability is defined as "legal responsibility to another ... enforceable by civil remedy." *Black's Law Dictionary* 1053 (10th ed.2014).

**2.** " 'Damages are the sum of money which a person wronged is entitled to receive from a wrongdoer as compensation for the wrong.' " *Black's Law Dictionary* 471 (10th ed.2014)

(quoting Frank Gahan, *The Law of Damages* 1 (1936)).

**3.** An execution is "[t]he act of carrying out or putting into effect" a court order or judgment. *Black's Law Dictionary* 689 (10th ed.2014).

23's requirements must be interpreted in keeping with Article III constraints . . . ."). Thus, the supposed classes must be decertified and dismissed or, at least, remanded to the district court for proper recertification of a lawfully assembled class and entry of a final judgment identifying damages specific to each individual member of a legitimate class. *Genesis Healthcare Corp. v. Symczyk*, —— U.S. ——, 133 S.Ct. 1523, 1528, 185 L.Ed.2d 636 (2013) (holding that for purposes of Article III, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed") (quotations omitted).

## II. DISCUSSION

### A.

The panel majority substantially depends upon *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) in rendering judgment in this appeal. But, respectfully, *Mt. Clemens* bears no weight whatever in support of the majority's attempted validation of its counter-factual legal conclusions.

The panel states, "[A]pplying Tyson's K-code policy and expert testimony to 'generate . . . answers' for individual overtime claims did require inference, but this inference is allowable under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (allowing liability based on 'just and reasonable inference' when complete records do not exist.)." *Bouaphakeo*, 765 F.3d at 797 (second alteration in original). But, the Supreme Court in *Mt. Clemens* does not explicate, generally or specifically, language supportive of the panel majority's above statements. And, standing alone, the panel's statements are irrelevant to this case because individual *"damages,"* not group liability, are the fighting issue.

The panel further states, "[f]or the donning, doffing, and walking in *Mt. Clemens*,

testimony from eight employees established liability for 300 similarly situated workers. *Mt. Clemens*, 328 U.S. at 684, 66 S.Ct. 1187; `Mt. Clemens Pottery Co. v. Anderson*, 149 F.2d 461, 462 (6th Cir.1945) (discussing testimony)." *Id.* at 799. With this "eight employees established *liabili-. ty*" statement, the panel erroneously seeks to validate and affirm in this case the lump sum *damages* verdict returned by the trial jury as instructed by the trial court, which verdict was used, in turn, by the trial court to enter an erroneous lump sum compensatory damages judgment.

While there is reference to eight employees' testimony in the *Mt. Clemens* Sixth Circuit opinion, 149 F.2d at 462, and while such testimony may have been relevant to the Mt. Clemens' group *liability* for overtime pay under the FLSA given the circumstances of that litigation and that particular appeal, the panel majority's reference to the Sixth Circuit's discussion of trial testimony has no relevance whatever to the *damages* at issue in either the Supreme Court's *Mt. Clemens* opinion or in this case. Indeed, in *Mt. Clemens*, the Supreme Court, referring to individual class damages, stated, "we remand [this] case for the determination of the amount of walking time involved and the amount of preliminary activities performed, giving due consideration to the de minimis doctrine and calculating the resulting damages under the [FLSA]." 328 U.S. at 694, 66 S.Ct. 1187.

Also, questions of liability in a FLSA case or in a Federal Rule 23(b) case guided by the FLSA present matters of law for the court. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000). Damages, on the other hand, are matters for jury determination under

properly drawn instructions on the law from the trial court. *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir.2008) (discussing the jury's role in assessing compensatory damages and the court's role in the award of liquidated damages under the FLSA); *Borough v. Duluth, Missabe & Iron Range Ry. Co.*, 762 F.2d 66, 69 (8th Cir.1985) ("[C]alculation of damages are questions of fact and peculiarly within the province of the jury.").

*Mt. Clemens* does say, as noted by the panel opinion, an employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." 328 U.S. at 687, 66 S.Ct. 1187 *see also Holaway v. Stratasys, Inc.*, No. 14–1146, 2014 WL 5755987 (8th Cir. Nov. 6, 2014). And, notwithstanding the panel's inference to the contrary, that individual burden of proof is by a preponderance of the evidence and the burden runs to each putative class member, although presumably with the benefit of admissible circumstantial evidence adduced by the class member or by the classes' named plaintiffs.

In *Mt. Clemens,* the Supreme Court, noting an employer's responsibility to keep adequate payroll records under 29 U.S.C. § 211(c) of the FLSA, and further noting that Mt. Clemens had not done so, unremarkably held, "[i]n such a situation we hold that an employee has· carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687, 66 S.Ct. 1187. The long established "reasonable inference rule" by definition, simply identifies the enduring evidentiary principle "that a jury, in deciding a case, may properly consider any reasonable inference drawn from the evidence presented at trial." *Black's Law Dictionary* 1457 (10th ed.2014). It is, at bottom, the simple recognition of the availability of circumstantial evidence. In this vein, there is precedent for the proposition that if an employer has failed to keep payroll records, employees are to be awarded compensation based upon the most accurate basis possible. *Holaway,* 2014 WL 5755987, at *3. And, "once the employee has shown work performed for which the employee was not compensated, and sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Id.* at *2 (quotation and internal quotation omitted).

Such burden-shifting rationale is not applicable in this case for at least two reasons. First, well over half of the putative class employees in this case have not "shown work performed for which [they were] not compensated." *Id.* Indeed, they have affirmatively shown through their own evidence that they have performed no work for which they have not been compensated.

Second, in this case, there is clearly no dearth of adequate attendance, assignment, equipment, work time and payroll records as contemplated by *Mt. Clemens* and *Holaway.* Complete time .and work records exist and were available to each Tyson employee and their expert witnesses—including entitlement to and payment of K-code wages resulting from donning, doffing, rinsing and walking specific to each employee and department. The individual members of the alleged classes simply disagree with Tyson's K-code time calculations and, thus, assume the burden of proof of a different result by adducing a preponderance of admissible evidence to

the contrary. However, what the class representatives actually succeed in proving with their expert testimony in this case is that a large number of the members of their assembled classes actually suffered no damages at all and, under Supreme Court precedent, and that of this circuit, cannot, in the final analysis, be part of a lawfully created class. *Genesis Healthcare*, 133 S.Ct. at 1528; *Amchem Prods.*, 521 U.S. 591, 613 & n. 15, 117 S.Ct. 2231, 138 L.Ed.2d 689. Neither does any established precedent extend employer overtime pay liability to any member of a purported class who has been fully reimbursed for his or her working time by the Tyson K-code payments. *Blades*, 400 F.3d at 571.

### B.

As noted in my panel dissent, plaintiffs, as required by *Mt. Clemens*, offered individual member damage evidence at trial. Dr. Liesl Fox made and presented to the jury individual damages calculations that incorporated time study information created by Dr. Kenneth Mericle. Dr. Fox, without objection by Tyson, also adopted Tyson's several employment records including Tyson's individual K-code payment register. The only identifiable variable fact that Dr. Fox used in her damages calculations was the substitution of Dr. Mericle's department-by-department time studies of 21.25 minutes and 18 minutes per employee per day in lieu of Tyson's 4–minute and 8–minute K-code determinations. Dr. Fox, using Dr. Mericle's more generous time measurements, testified that at least 212 members of the certified

class had no pay claim because wages due for time spent doffing, donning, rinsing and walking—less the already proffered individual K-code payments—"would not have been enough to kick them into overtime." Further, plaintiffs' evidence indicated that even using Dr. Fox's damage calculations, there were at least 509 additional workers whose damages ranged from $0.27 to less than $100, thus falling into the de minimis[4] range mentioned in *Mt. Clemens*. In this regard, Dr. Fox's complete range of individual damages ran from $0.00 to $9,903.25—that when finally totaled tallied up to the $6,686,082.36 jury demand by the plaintiffs that I next discuss.

Dr. Fox's total damages calculation, using, as earlier noted, Dr. Mericle's time observations of 21.25 minutes in the kill department and 18 minutes in the fabrication department, presented to the jury, through plaintiffs' trial exhibit 345, class damages of $8,297,784.80–$1,611,702.44 for the FLSA class and $6,686,082.36 for the Iowa class. On cross-examination concerning her calculations, Dr. Fox was asked "if an employee worked less than Dr. Mericle's [time study] numbers . . . it is possible that Tyson's K-code payments already could have fully paid them for that time, right?" Dr. Fox responded, "[p]otentially."

Dr. Fox was then asked and answered the following questions:

> Q. And do you remember telling me you can't just take a fraction or a

---

4. The "de minimis doctrine" is actually unique to the FLSA and first appeared in *Mt. Clemens*. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 377 (4th Cir.2011) (Wilkerson, J., concurring). Very generally, it stands for the proposition that de minimis periods of work are noncompensable. "In *[Mt. Clemens]*, the Court acknowledged that a de minimis rule is necessary because '[t]he workweek contem-

plated by [the FLSA] must be computed in light of the realities of the industrial world,' and those 'realities of the industrial world' must include the commonsense observation that the computations of ever smaller increments of time may eventually become so onerous that they should not be the subject of endless litigation." *Id.* at 378 (quoting *Mt. Clemens*, 328 U.S. at 692, 66 S.Ct. 1187).

portion of that because as you go down in numbers, people—I think you told Mr. Wiggins this this morning—you start finding that people start dropping out of overtime, right?

A. That's correct.

Q. So if somebody was at 41 hours, let's say 40 and a half hours, and you took out an hour because let's say the jury concludes that work didn't take as long as Dr. Mericle said, a lot of those people would fall into non-overtime, correct?

A. That's correct. I don't know how many, but yes, some would.

Q. So you can't just take your original $6.6 million number and say well, we are going to cut it in half if we find Mericle's numbers are overstated by twice or let me put this a better way. If the jury were to say no, Dr. Mericle's numbers are wrong, it is only half that, you can't just take half of your $6.6 million, can you?

A. No, you cannot.

Q. Right. And the lower and lower the number of minutes goes, the more and more people start falling out of overtime, right?

A. That's correct.

Q. So at some point if you drop the number low enough, you would expect that people would be at zero on your chart, right?

A. Some people would, yes.

Q. Okay. Well, anybody whose K-code time covers the amount of time the jury thinks should be paid would be a zero, right?

A. That's correct.

So, notwithstanding exhibit 345 with its damages calculation of $8,297,784.80, class counsel conceded that the FLSA class, in part, duplicated the Iowa Class, and then asked the jury to return a verdict for the above-stated $6,686,082.36 for both of the classes. The jury, obviously rejecting Dr. Mericle's over-generous time study conclusions, returned a verdict of $2,892,378.70. This figure amounts to 43.25 percent of the above-stated jury demand, which demand was, as above noted, based upon the sum total of the Dr. Fox class-member itemization received in evidence as trial exhibit D–2274, which exhibit already included 212 members with no damages and an additional 509 members with de minimis damages.

Thus, giving the best gloss available to the plaintiffs under the evidence they themselves adduced, well more than one-half of the certified class of 3,344 persons have no damages whatever and the balance have markedly lower individual damages that are now virtually impossible to accurately calculate.

### C.

The status of this case can be summarized as follows:

1. A certified class of 3,344 persons, more than one-half of which have no provable damages, are the joint beneficiaries of a lump sum jury verdict and lump sum district court judgment in the amount of $2,892,378.70 in compensatory damages.

2. The lump sum judgment contains no discernible guidelines sufficient to establish the individual damages due the limited number of members of the certified class with provable damages.

3. Neither the district court nor the panel majority offer any instructions for, or insight into, how this judgment may be lawfully and fairly executed and by whom.

If the case must be returned to the district court for further action concerning distribution of damages, the existing judg-

ment is clearly not a final appealable order. Very simply, a final order is one which "terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, I.M. & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28–29, 2 S.Ct. 6, 27 L.Ed. 638 (1883). Judgments that leave the "assessment of damages or awarding of other relief" unresolved, "have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).

## III.  CONCLUSION

There was a motion to decertify the class after judgment. At that point, binding precedent indicates that the district court should have either decertified the classes entirely or recertified them in accordance with only those putative members with provable damages, if such damages were reasonably discernible from the evidence available at that time.

Accordingly, I dissent from the panel's denial of the requested rehearing and, to the extent I am by law authorized to do so, the denial of rehearing by a majority of the court en banc. The important issues and extraordinary circumstances presented by this case should be properly considered-especially noting that several other somewhat similar cases are presently at issue in the district courts of this circuit and this court on appeal.

---

5. Tyson kept attendance, assignment, equipment, work time, and payroll records. These records permitted the plaintiffs' experts to calculate individualized damages. These records, however, do not reflect the amount of time employees spent donning and doffing. *See Mt. Clemens*, 328 U.S. at 688, 66 S.Ct.

BENTON, Circuit Judge, respecting the denial of rehearing en banc.

This court held that the district court did not abuse its discretion in certifying a class of Tyson Foods, Inc. employees, who presented sufficient evidence to support the jury's award of overtime pay.

The dissent to the denial of panel rehearing claims that the class lacks commonality and focuses exclusively on damages issues. But all parties asked the jury to resolve Tyson's liability: Did Tyson's K–Code policy fully compensate its Storm Lake, Iowa, "gang-time" employees for their donning and doffing activities? *See* **Verdict Form, Question No. 5** ("Did the plaintiffs prove that they are entitled to additional compensation for any of the donning and doffing activities at issue in this case?"). *See also* **Jury Instruction No. 3** ("Summary of Claims"). This was a common contention of the class. *See Wal-Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (noting that a class's "claims must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

Contrary to the dissent, *Mt. Clemens* permits the use of a reasonable inference to determine liability and damages in this context. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ("It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages."). Tyson kept no records of donning and doffing time.[5] A

---

1187 ("[E]ven where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most

"reasonable inference" demonstrates compensable time. *See id. See also Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 881–82 (8th Cir.2011) (holding, based on *Mt. Clemens,* that if Applebee's did not track time employees spent on tipped versus nontipped duties, they could demonstrate their nontipped work through reasonable inference). The dissent asserts that if some employees are entitled to no overtime, then no "reasonable inference" may show the overtime worked by other employees. This stands *Mt. Clemens* on its head: The dissent makes "the burden of proving that [the employee] performed work for which he was not properly compensated" into "an impossible hurdle for the employee." *Mt. Clemens,* 328 U.S. at 687, 66 S.Ct. 1187.

The dissent implies that there is no Article III standing because some employees are entitled to no overtime. But the "federal courts do not require that each member of a class submit evidence of personal standing," so long as each member may allege injury. *Halvorson v. Auto–Owners Ins. Co.,* 718 F.3d 773, 779 (8th Cir.2013), *quoting Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1034 (8th Cir.2010) (internal quotation marks omitted). Here, all members of the class were Tyson "gang time" employees that necessarily spent time donning and doffing, and therefore each could allege he was undercompensated by Tyson's K–Code policy. The failure of some employees to demonstrate damages goes to the merits, not jurisdiction. *See Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 757–58 (7th Cir.2014) (explaining that a class definition is too broad if it includes those "who *could not* have been harmed," but is acceptable if it includes those "who *were not* harmed"). *See also Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 677 (7th Cir.2009) ("[A] class will often include persons who have not been

accurate basis possible under the circum-

injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case … if [class members] are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification."). It also does not overwhelm commonality, particularly postverdict. *See Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 1433, 185 L.Ed.2d 515 (2013) (allowing damages variations unless "individual damage calculations … overwhelm questions common to the class"). *See also Gortat v. Capala Bros.,* 949 F.Supp.2d 374, 383 (E.D.N.Y. 2013) ("Research has failed to reveal a single decided case or a single sentence in the legal literature to which a similar postverdict [decertification] motion has been addressed."), *aff'd* 568 Fed.Appx. 78, 79 (2d Cir.2014); *In re Urethane Antitrust Litig.,* 768 F.3d 1245, 1256 (10th Cir.2014) (affirming denial of decertification motion due to lateness and prejudice when motion was filed one week before trial).

The dissent's claim that more than half the class has no damages is speculative. True, the jury lowered the experts' donning and doffing estimates. But it does not follow that, because the jury awarded the plaintiffs 43.25 percent of their original jury demand, more than half the class has no damages. The record shows that many employees regularly worked overtime, so that all of their donning and doffing time is fully compensable. Likewise, nothing in the record or case law supports the dissent's conclusion that damages under $100 are de minimis. *See* **Verdict Form, Question No. 4,** *citing* **Jury Instruction No. 6** ("Employers must compensate employees for even small amounts of time, unless the time is so minuscule that it cannot as a practical administrative matter be record-

stances.").

ed for payroll purposes.... There is no precise amount of time that may be denied compensation as 'de minimis.' "). *See also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks omitted)).

The court, without objection, instructed the jury only as to aggregate damages. *See* **Verdict Form** (giving one line for the jury to "indicate how much you award for" pre- and post-shift donning and doffing). *See also In re Urethane Antitrust Litig.,* 768 F.3d at 1269 ("Dow cannot complain about the uncertainties inherent in an aggregate damages award because Dow never requested individualized findings on damages."). The court then entered a final judgment awarding the class aggregate damages. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 479 n. 5, 481 n. 7, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (rejecting Boeing's argument that the judgment is not final until class members have presented individual claims because Boeing's liability was not contingent upon individual claims and the "judgment terminated the litigation between Boeing and the class concerning the extent of Boeing's liability"). In this case, employees without damages are not entitled to allocation of the award. **Jury Instruction No. 8** ("Any employee who has already received full compensation for all activities you may find to be compensable is not entitled to recover any damages."). Beyond that, Tyson has no interest in how the fund is allocated among the class members. *See Boeing,* 444 U.S. at 481 & n. 7 ("The judgment on the merits stripped Boeing of any present interest in the fund. Thus, Boeing had no cognizable interest in further litigation be-

tween the class and its lawyers over the amount of fees ultimately awarded from money belonging to the class."). *See also In re Urethane Antitrust Litig.,* 768 F.3d at 1269 (holding Dow "has no interest in the method of distributing the aggregate damages award among the class members" and rejecting Dow's argument that a jury must determine which class members suffered less or no injury), *citing Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d 1248, 1258 (11th Cir.2003) ("[A] defendant has no interest in how the class members apportion and distribute a[n] [aggregate] damage [award] among themselves.").